## JACKSON *v.* THE STATE.

1. One ground of the motion for a new trial assigns error on the following charge to the jury: "The defendant contends that at the time the killing is alleged to have taken place, that he was justified because of the fact that the deceased was attempting to commit a felony or other serious injury upon him amounting to a felony, and that he acted in self-defense, and that the deceased was attempting to have sexual intercourse with the defendant's wife.   These are the two lines of defense he sets out in this case."   This charge is not error for any of the reasons assigned.

2. Movant complains that the court erred in the following charge to the jury: "In that connection I charge you also that the State contends that the deceased was either killed down at the forks of the road where the oak trees that you have heard testimony about stood, or that he was decoyed into the yard and shot."   The criticisms on this charge are, first, that it contained an expresssion or intimation of opinion that there were in fact "forks of the road," and that there was "an oak tree standing there," and that evidence had been introduced establishing these facts;   that the defendant by his plea of not guilty attacked the existence of these facts, and at no time during the trial had admitted the same;   second, that there was no evidence supporting the contention that the deceased "was decoyed into the yard and shot," and that the submission of that contention to the jury was prejudicial to the defendant and tended to confuse and mislead the jury;   also that it was an expression of opinion.   This charge is not error for any of the reasons assigned.   It does not contain any expression of opinion by the court as to proved facts;   and it cannot be said, from the record, that the State did not contend that the deceased was decoyed into the yard of the accused and shot;   nor can it be said that, considering the evidence as a whole, such a contention transgressed the reasonable limitation applicable to the argument of counsel.

3. Movant complains of the following charge to the jury:   "Just in that connection, gentlemen, the term 'or other equivalent circumstances

means that the circumstances must be equivalent of an assault, or an attempt to commit a serious personal injury and must exclude all idea of deliberation and malice, and must be done under the excitement of passion." The criticisms of this charge are: first, that it is an incorrect statement of law, and properly construed means that the " other equivalent circumstances must be done under the excitement of passion;" second, that the charge was inaptly stated, was misleading and confusing, and tended to and did lead the jury to believe that in order to reduce the killing from murder to manslaughter the jury must find that any provocation given by the deceased was given by the deceased while the defendant was under the excitement of passion, whereas the true rule is that any provocation which would be the equivalent of an actual assault or an attempt by the deceased to commit a serious personal injury, regardless of whether or not the deceased was " under the excitement of passion," would be sufficient to reduce the killing from murder to manslaughter." This charge was not error. " While mere words, threats, menaces, or contemptuous gestures will not constitute ' equivalent circumstances,' within the meaning of the Penal Code, § 65, which will reduce murder to manslaughter, yet what circumstances will present this equivalence and justify the excitement of passion and exclude all idea of deliberation or malice the law does not specifically declare. It furnishes a standard, and leaves the jury in each case to make the comparison and determine whether the special facts of the case before them come up to that standard or not. There was, therefore, no error in omitting to charge that certain acts other than those referred to in the Penal Code would constitute " equivalent circumstances." See also *Rumsey* v. *State*, 126 *Ga.* 419 (2) (55 S. E. 167), where it was said at page 423: " The ' equivalent circumstances ' contemplated by this section of our Penal Code are not necessarily such attendant facts as are in the nature of an actual assault or an attempt to commit a serious injury upon the person of the slayer, but are such mitigating circumstances as are reasonably calculated to produce the same state of mind as would an actual assault upon him or an attempt to do him serious bodily injury." *Battle* v. *State*, 133 *Ga.* 182, 185 (65 S. E. 382).

4. Movant complains that the court erred in refusing a written request to give in charge the following: " In arriving at the weight and credit you will give to the testimony of the witness, you may consider the fact as to whether or not any witness testifying is related to the deceased." Movant insists that the request stated a correct principle of law applicable to the facts of the case, and not covered by the general charge. In the general charge, after instructing the jury that they had the right to take into consideration the witnesses' manner of testifying, their interest or want of interes. in the case, their means and opportunity of knowing the facts about which they testified, the reasonableness or unreasonableness of their testimony, continued as follows: " the relationship of the parties, if there be any; all of these things you have a right to consider in determining what the truth is." Plaintiff insists that the term " relationship of the parties " did not sufficiently cover the principle requested, because the case on trial was between the State

of Georgia and G. W. Jackson, and " the decedent was in no sense a party to the case." Technically speaking, the deceased was of course not a party to the case, but he was a party to the transaction which resulted in the homicide; and it is extremely unlikely that the jury took the technical view of the expression. As a matter of fact the jurors must have understood the common every-day expression "the parties" as meaning the parties to the tragedy, as they were not expected to understand the strictly legal meaning of who are parties to the suit in the trial of a criminal case. Even if the expression was technically incorrect, this ground of the motion furnishes no reason for reversing the judgment, where it is obvious that it resulted in no injury to the defendant.

5. Movant complains of the refusal of a written request giving in charge the following: "In arriving at the weight and credit you will give to the testimony of the witness you may take into consideration the state of the witnesses' feelings toward the defendant or members of his family, or any other fact or matter appearing from the evidence, cal- culated to influence, bias, prejudice, or sway the testimony of the wit- ness." Movant insists that the request submitted was pertinent, ap- propriate, and legal, and was not covered by the general charge; that the request was peculiarly applicable to the facts of the case, because three named witnesses " and other witnesses " for the State, all of whom gave damaging testimony against the defendant, testified that either they or members of their families had had lawsuits with the defendant and members of defendant's family. When considered in connection with the general charge on the subject, this ground of the motion for a new trial is without merit.

6. The court did not err in refusing a written request to give to the jury an instruction which was argumentative in its character and contained a detailed statement of the facts upon which the defendant relied for his defense.

7. The fact that counsel retained for the prosecution conducted the trial of the case, the solicitor-general being present, was not contrary to law, it not appearing that the retained counsel did anything improper, or that they invaded the province of the solicitor-general, or did anything without his consent and approval.

8. Other grounds of the motion for a new trial are expressly abandoned by the plaintiff in error.

9. The verdict is supported by evidence.

No. 3686. NOVEMBER 27, 1923. REHEARING DENIED DECEMBER 20, 1923.

Murder.    Before Judge Strange.    Jenkins superior court. February 27, 1923.

*Overstreet & Overstreet, James A. Dixon, E. G. Weathers,* and *Charles G. Reynolds,* for plaintiff in error.

*George M. Napier, attorney-general, A. S. Anderson, solicitor-general,* and *Seward M. Smith, asst. atty.-gen., G. C. Dekle, Wil- liam Woodrum,* and *R. Lee Moore,* contra.

GILBERT, J. 1. One ground of the motion for a new trial

assigns error on the following charge to the jury: " The defendant contends that at the time the killing is alleged to have taken place, that he was justified because of the fact that the deceased was attempting to. commit a felony or other serious injury upon him amounting to a felony, and that he acted in self-defense, and that .the deceased .was attempting to have sexual intercourse with the defendant's wife. These are the two lines of defense he sets out in this case." The criticisms are as follows: 1. The charge was not authorized by the evidence or by the defendant's statement. 2. The charge incorrectly stated that the defendant based his defense on the ground of a past wrong instead of the lawful right to prevent the debauchery of his wife; and the charge was an expression or intimation of opinion by the court that the defendant killed the deceased in revenge for such past wrong, and wholly excluded the contention of the defendant that he killed the deceased to prevent the debauchery of defendant's wife. 3. The charge was inapplicable, because the defendant did not contend that he was justified in killing the deceased on the theory that the latter was attempting to commit a felony or other serious personal injury, amounting to a felony, on the defendant; but the contention made by the defendant was that he was unarmed at the time of the killing, that the deceased made improper proposals to his wife, and cursed the defendant and put his hand in his hip-pocket as if he meant to draw a weapon, and that the defendant really and in good faith thought that the defendant was armed and meant to shoot or to kill the defendant. 4. " That the circumstances surrounding the defendant at the time of the killing were sufficient to excite the fears of a reasonable man that his life was in danger, and that acting under the influence of those fears, and not in a spirit of revenge, the defendant shot and killed the deceased; . . that defendant's counsel, in their argument to the jury contended vehemently, and in as plain and forceful manner as they could, that the defendant relied on the theory of reasonable fears, as hereinbefore set out, and they at no time contended that the deceased made any effort actually to commit a felony or serious personal injury amounting to a felony on the defendant." 5. That the court, by reason of the charge complained of, withdrew from the consideration of the jury a substantial issue and defense, to wit, that the defendant killed the deceased " under the

fears of a reasonable man that the deceased was attempting to kill him or was attempting to commit a personal injury on the defendant which would have amounted to a felony." 6. Because the court, in the charge herein complained of in this ground of the motion, " submitted to the jury a contention of the State that the deceased was decoyed into defendant's yard and there shot by the defendant," that " there was no evidence, fact, or circumstance in complained of particularly harmful." 7. Because so much of the the case on which to base such contention of the State, and its submission to the jury, after the court had submitted the contentions of the defendant incorrectly, made the charge therein charge as reads, " and that the deceased was attempting to have sexual intercourse with the defendant's wife," is inapplicable to the facts of the case and without evidence to support it, and it was not supported by the defendant's statement, nor any theory of the evidence and the defendant's statement." 8. The charge is an incorrect statement of the contentions of the defendant, because " the defendant contended not only that the deceased was attempting to have sexual intercourse with the defendant's wife, but that the deceased made an overt act to carry out such intention, and actually asked defendant's wife, in the presence of defendant, to submit to him and have sexual intercourse; that the deceased, when ordered to leave defendant's yard, cursed defendant and said, ' I will put you out '; and that the defendant, to prevent the debauchery and seduction of his wife, shot and killed the deceased." 9. Because so much of said charge as is excepted to in the two preceding assignments of error is an expression or intimation of an opinion by the court that the defendant killed the deceased on account of an attempt on the part of the deceased to have sexual intercourse with defendant's wife; that is, that he killed the deceased in revenge for a past wrong; and the said charge wholly excludes from the consideration of the jury the contention of the defendant that he killed the deceased to prevent the debauchery and seduction of defendant's wife.

Counsel for plaintiff in error, in his brief, states that " the part of the charge which is substantially stated above is excepted to in six of the assignments of error in the motion for a new trial. The assignments of error are similar, and can be conveniently dealt with together." Accordingly all of these assignments of error will

be dealt with in this division of the opinion. In the general charge, after defining justifiable homicide, the court charged section 71 of the Penal Code, which has reference to the doctrine of reasonable fears, and in the same connection instructed the jury as follows: "or, if you should [find] that the circumstances were apparent to him, although you may determine that they were not real, if they were apparent to him, surrounded as he was at the time you find that he acted, and they were sufficient to excite the fears of a reasonable man that his life was in danger or a felony was about to be committed on him, and he acted under the influence of that apparent necessity, under the law it would be the equivalent of a real necessity, and he would be justified." We do not think, therefore, that the excerpt from the charge quoted was erroneous on the ground that it restricted the defense to an actual assault or an actual personal injury on the defendant. It is true that in stating the contention the court did not mention that the apparent necessity was equivalent to a real necessity, but the instruction just quoted fully acquainted the jury with the right of the defendant, under the law, to act upon the apparent necessity, and that if the defendant acted under the influence of an apparent necessity it would be the equivalent of a real necessity and he would be justified. The instruction was more favorable than the law required in this respect, for the court did not restrict the right to act upon an apparent necessity to a case where the defendant was acting in good faith. *Redd* v. *State,* 99 *Ga.* 210 (3) (25 S. E. 268); *White* v. *State,* 147 *Ga.* 377, 380 (94 S. E. 222). The charge obviously is not subject to the criticism that the court erroneously restricted the contention of the defendant to a defense based upon the right to kill for a past injury, nor did it constitute an expression of opinion. Moreover, in the ground of the motion for a new trial which complains of the refusal of the court to instruct the jury as requested in writing, the written request to charge contains the following: "He [the defendant] contends that he was justifiable in shooting the deceased on account of the deceased having asked the defendant's wife in the hearing of the defendant to have sexual intercourse with him; that he was also justifiable on the ground that at the time of the killing he was laboring under the fears of a reasonable man that his life was in danger or that a felony was about to be committed on his person."

Accordingly, this ground of the motion shows no cause for the grant of a new trial.

2 (headnote 6). Movant complains that the court erred in refusing a written request, duly submitted, to give in charge the following: " The defendant contends that some four years ago he was the owner of a piece of land in this county; that the deceased wanted this land and tried to buy it from him; that some two years ago he consented to sell it to the deceased; that the deceased formed a mob of his brothers-in-law, the Woodrum boys, and sent them to the house of the defendant; that these Woodrum boys went to the house of the defendant, attacked him, and cut him on the face and shoulders with knives; that after this he stayed on his place for a time, but finally decided to move away to avoid further trouble, and did move away and rented a place on his mother's land; that he rented out his place, and that Tom Aycock cut his fences and ran away his hands and pastured his stock in the defendant's field; that while the defendant was living on the piece of land owned by the defendant the deceased came to his house and made improper proposals to his wife, and that his wife told the defendant about it; that the defendant decided to let it pass, thinking that it would not happen again; that the deceased, on the morning of the alleged killing, came to the home of the defendant, went in the yard where his wife was washing, and asked the defendant's wife to have sexual intercourse with him; that the defendant was in the house reading a Lee's catalogue, and heard this proposal; that defendant, upon hearing the deceased make this proposal to his wife, got his gun from the rack, went into the yard and asked the deceased to leave the yard; that the deceased replied, 'What have you got to do with it? You God damn son of a bitch, I didn't know you had a yard. I will put you out.' That the deceased then put his hand to his pocket as if he meant to draw a weapon, and the defendant shot and killed the deceased. The defendant contends that he made no threats against the deceased, but on the contrary stated to several people that he was leaving the community in which the deceased lived, for the purpose of avoiding trouble with the deceased and his family. He contends that he went to the father of the deceased at the time the trouble between the defendant and the deceased started, and asked him to make the deceased leave him alone. He contends that the

father of the deceased told him that he heard that the defendant had told one Mr. Parker and certain detectives where some goods that had been stolen in a bankruptcy matter were secreted, and that he had better look out or the bear would get him. He contends that he was justifiable in shooting the deceased on account of the deceased having asked the defendant's wife in the hearing of the defendant to have sexual intercourse with; that he is also justifiable on the ground that at the time of the killing he was laboring under the fears of a reasonable man that his life was in danger or that a felony was about to be committed on his person; that he acted under the influence of those fears, and not in a spirit of revenge; that he is entirely innocent and should be fully acquitted and discharged by this jury." Movant insists that the request was pertinent and legal and authorized by the evidence and the defendant's statement; that the requested charge embodied the contention of the defendant that he was entirely innocent and should be acquitted; and that the charge of the court nowhere stated to the jury that the defendant so contended, nor did the court charge the jury that, "the homicide appearing to be justifiable, the person indicted shall upon the trial be fully acquitted and discharged, nor did the court anywhere charge the jury that if the killing was justifiable the defendant should be acquitted." This request, in so far as it contained correct legal principles, was fully and fairly covered in the general charge. Much of it is argumentative and not suitable to be included in the court's instructions to the jury. The court having fully instructed the jury in regard to the law of justifiable homicide, it was not required to give in charge section 76 of the Penal Code (1910), as follows: "The homicide appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged." *Worley* v. *State,* 136 *Ga.* 231 (4) (71 S. E. 153); *Brooks* v. *State,* 150 *Ga.* 732 (2) (105 S. E. 362).

3 (headnote 7). The eleventh ground of the motion is as follows: "At the beginning of the trial, defendant objected to R. Lee Moore, W. W. Woodrum, and G. C. Dekle, attorneys at law, taking any part in the trial of the case, for the reason that they were employed by the family of the deceased, and had been paid fees to assist in the prosecution. It was admitted in open court by

54

these attorneys, that they were so employed by the family of the deceased, and had been paid fees. This objection the court overruled, and permitted each of these counsel to assist the solicitor, and make an argument in the case. Said attorneys completely controlled, directed, nd managed said case on the part of the State. The solicitor of said court, A. S. Anderson, was present and able to handle the case, was not sick or for any reason disqualified, and neither of said attorneys were, by the court, sworn in as an assistant solicitor pro tem. Said solicitor was present assisting in the case and made an argument." Properly construed, the language of this ground of the motion means that after the return of the indictment into court in the usual way the counsel employed by the family of the deceased took part in the prosecution, and were permitted, over objection of counsel for the accused, to assist the solicitor and to make arguments in the case. The language, "said attorneys completely controlled, directed, and managed said case on the part of the State," is a mere conclusion, no facts being stated. Accordingly it will not be assumed by this court that the employed counsel exceeded the limits of legal authority. Under the law the whole proceeding, from the time the case is laid before the solicitor-general until the rendition of the verdict, is under the direction, supervision, and control of that officer, subject to such restriction as the law imposes. Counsel employed to assist in the prosecution of criminal cases can perform no duties as such except those agreeable to and under the direction of the solicitor-general. In so far as facts are stated in this ground of the motion, nothing was done contrary to the principles stated; and therefore this ground of the motion is without merit.

4. None of the remaining headnotes require elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*