## 29505. BROOKS v. THE STATE.

UNDERCOFLER, Presiding Justice.

Bobby Brooks was convicted of the murder of John Gordon Dodd and sentenced to life imprisonment.

The jury was authorized to find from the evidence that the defendant had known the victim, a 78-year-old man for four or five years; that the victim lived with his son; that the victim usually carried $80 to $100 with him in a black billfold; that about 3:00 p. m. on July 10, 1973, the victim went to a local grocery store with the defendant in his car; that the victim purchased some cola drinks, biscuits, tobacco and cigarette leaves and paid for them with a $10 bill which he took from a dark billfold; that he usually cashed his social security checks at the store about the 3rd of each month; that the checks were over $80 per month. Harvey Brooks, Jr., a brother of the defendant, testified that after he received certain information from their sister, he found the body of the victim and called the sheriff's office. The body was found

in a creek in an isolated area under a wooden bridge on Tidwell Road in Forsyth County. There was a barbed wire fence about four or five feet from the bridge and the bridge was about three feet higher than the fence. Some change, cigarette paper and a pocket knife were removed from the body.

On July 10th the defendant went to the home of Erwin McPherson about 6:30 p. m. and tried to sell him or a Mr. Durant who was there a saw and hammer for a dollar. Mr. Durant bought them from him. The defendant had been drinking and had about $70 or $80 with him, and the defendant said he was going on a trip and needed a little more money.

The defendant went to the home of Jerry Lee Blalock, his brother-in-law, about 9:00 p. m. on July 10th; then they all visited the home of a sister-in-law and returned to the Blalock home about 11:00 p. m. The defendant spent the night with the Blalocks and the next morning about 7:00 the defendant and Blalock were the only people awake in the house. The defendant told Blalock that he had pushed a man off a bridge, that he thought he might have killed him, but that he thought he was still breathing when he left there.

On July 11 the defendant went to the home of J. C. Towe and asked Irwin McAfee, who lived in the home, to go to Florida with him; McAfee said he could not go because he had to work the next day; the defendant said not to worry about the money needed to go to Florida and showed Towe a black pocketbook but did not say how much money was in it.

An autopsy was performed on the victim's body and it showed a bruised area on the top of the head, a large circular area of bruising in front of the left ear with several small lacerations within the area; a similar area in front of the right ear; bruises in the area of the lips and mouth and back of the hands; there were several incised wounds made by a sharp object (such as a knife or razor) on the side of the neck, one of which wounds exposed the interior of the larynx, penetrated almost to the level of the esophagus and continued to the right. This wound began about one inch to the left of the midline in front and extended almost underneath the right ear; and

there were one or two bruises in the left collarbone region. There were three or four incised wounds in the neck area. The cause of death was the breathing in of blood through the open hole in the larynx or drowning in one's own blood.

The defendant testified that he and the victim left the grocery store together and went to buy some beer; they went into the beer store where the victim began talking with some of his friends; they bought six cans of beer and each took half of them; the victim left the beer store with his other friends and the defendant went to the home of his sister-in-law and drank his beer; he then went to the home of the Blalocks where he spent the night; he went to his aunt's home the next day and drank some more beer. When he learned that a warrant had been issued for his arrest, he surrendered to the sheriff. He testified that he did not kill the victim. *Held:*

1. The general grounds of the motion for new trial are without merit.

2. The appellant contends that the trial court erred in requiring Jerry Lee Blalock to testify against his will. The witness was married to the sister of the defendant and stated that he did not want to testify against the defendant because it would bring infamy, disgrace, or public contempt upon a member of his family, his wife. Under compulsion of the trial court, the witness testified that the defendant told him that he had pushed a man off a bridge, that he thought he might have killed him, but that he thought the victim was still breathing when he left there.

Code § 38-1205 provides: "No party shall be required to testify as to any matter which may criminate or tend to criminate himself, or which shall tend to work a forfeiture of his estate, or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family." Code § 38-1711 provides: "A witness shall be relieved from testifying as to the same matters hereinbefore specified in relation to a party making discovery."

In Brown v. Walker, 161 U. S. 591, 598 (16 SC 644, 40 LE 819) it is said: "If the answer of the witness may have a tendency to disgrace him or bring him into

disrepute, and the proposed evidence be material to the issue on trial, the great weight of authority is that he may be compelled to answer, although, if the answer can have no effect upon the case, except so far as to impair the credibility of the witness, he may fall back upon his privilege."

In IIIA Wigmore on Evidence 855, 860, § 986, in the discussion on the privilege of a witness on disgracing answers, it is said: "So far, however, as the privilege was conceded at all, it had always two limitations: (1) It applied only to *collateral* facts, i. e., to facts not material to the issue in the case — in short, only to facts affecting character, bias, corruption, and the like; (2) it applied only to facts *directly* involving disgrace, and not to facts merely tending to disgrace indirectly."

"Although it has been asserted in a number of cases that a witness may refuse to give answers disgracing him or exposing him to infamy, the general rule is that, unless excused by statute, witness will not be excused from answering a question on the sole ground that his answer will disgrace him, subject to infamy, or bring him into disrepute, where it concerns a matter material or relevant to the issues, or he does not have an absolute right to refuse to answer." 98 CJS 277, § 445.

It follows that the trial court correctly required the witness to testify regarding the statement made by the defendant to him.

*Judgment affirmed. All the Justices concur, except Ingram and Hill, JJ., who concur in the judgment only.*

SUBMITTED DECEMBER 30, 1974 — DECIDED JANUARY 28, 1975.

*Spence, Garrett & Spence, D. William Garrett, Jr.,* for appellant.

*C. B. Holcomb, District Attorney,* for appellee.