## 32621. WOODS v. THE STATE.

UNDERCOFLER, Presiding Justice.

Dessie X. Woods and Cheryl Todd were tried jointly under a single indictment charging them in two counts of the murder and armed robbery of Ronnie Horne in Wheeler County on June 16, 1975. The death penalty was not sought. The record and transcript of trial shows the case was heavily publicized. Under these circumstances, the trial judge took extraordinary precautions to assure a fair trial. By stipulation of counsel, made an order of the court, almost unlimited discovery was permitted to appellant, the state giving counsel all statements made by appellant during and following arrest; permitting the defense to hear the full contents of tape recordings made by the defendants at the time of interrogation following arrest, and giving defense copies of all investigative reports and crime lab reports in its files. When state witnesses were reluctant to talk to defense counsel, the court ordered the state to notify these witnesses they should feel free to discuss the case with counsel. The court ordered the state crime laboratory to make available to defense counsel all exhibits which the state had forwarded to that agency for examination and report. To assure inadvertent waiver of objections did not occur during the trial of the case, the court issued a standing order that all objections made by defense counsel during ten pre-trial hearings on over 50 motions would be considered as continuing throughout trial of the case, and

granted a motion by counsel for appellant that all objections previously entered by counsel for Cheryl Todd be considered as having also been made in behalf of the appellant.

Early in the proceedings, the court stated that each motion made would be heard fully on the merits, all evidence entered and argument heard, and that an independent ruling on each motion would be made. Many other measures were taken by the court including the postponement of the trial upon motion of counsel several times and agreement to the severance of the trial of the co-defendants (which was later re-consolidated upon motion by the state acting upon a request from counsel for appellant.) Finally, venue of the trial was changed from Wheeler County to Telfair County and thence to Pulaski County where a trial jury was selected after extensive voir dire composed of six white females, five black females, and one black male. Following trial, this jury found Dessie Woods guilty of voluntary manslaughter and armed robbery and found co-defendant Cheryl Todd guilty of theft by taking. Appellant presented no evidence and did not testify. Cheryl Todd did testify in her own defense. Following conviction, appellant was sentenced to concurrent sentences of 10 years for voluntary manslaughter and 12 years for armed robbery. Cheryl Todd was sentenced to one and one-half years for theft by taking. Appellant appeals her convictions to this court. Todd's appeal is now before the Court of Appeals.

This case initially came to this court for review on January 13, 1977, and was docketed as Case No. 32056. However, the transcript, consisting of 2,487 pages, was not complete, and upon motion to remand, the appeal was stricken from the record. It was re-docketed as Case No. 32621 on June 23, 1977, and submitted again for review on August 5, 1977. By order of March 30, 1977, this court affirmed the denial of bond by the trial court on submission of a "motion for bail and stay of mandate pending appeal," there being a showing at that hearing that appellant had attempted to escape following sentence. By order of September 1, 1977, this court denied a motion to substitute counsel on appeal; permitted additional counsel requested by appellant to join in the

appeal as co-counsel, and denied a motion by the Attorney General to dismiss one of the two briefs submitted by these counsel.

A motion to remand the case to the Court of Appeals, still pending, is denied. Counsel on appeal have filed 20 enumerations of error, many of which overlap; consequently they are treated together in this opinion. Following a careful reading of the entire record and transcript of trial, we affirm.

### Statement of the Case

The state presented evidence that appellant, with co-defendant, Cheryl Todd, was hitchhiking back to Atlanta from Reidsville where they had been to visit Cheryl Todd's brother. In Lyons, Georgia, Ronnie Horne picked them up. He drove them toward Frank's Kountry Kitchen located on Highway 280 in Wheeler County. Horne contacted by radio one Royce Yawn, a fellow official of the auto insurance company with whom he had been working during the day, and told him to meet him to pick up some renewal forms and "that he had something he wanted to show him." Yawn arrived and saw the two women in the front seat of Horne's car. They drove to Frank's Kountry Kitchen where Horne stayed in his car, Yawn entered the restaurant after the two women where he bought a soft drink and returned to his car. Horne joined him there and they each had a drink of whiskey and sorted out renewals. The women had ordered some food and went to the rest room where they finished drinking the contents of two bottles of wine they had with them. The evidence showed Yawn was visibly under the influence of alcohol when he entered the restaurant and that he and Horne had been drinking during the day.

After leaving the restaurant, Cheryl Todd attempted to get into Royce Yawn's car because "she thought there was supposed to be a party," but was directed by Horne to get in his car if she wanted to ride. Horne left with the women on a road leading away from Atlanta. Yawn followed shortly thereafter, soon coming upon the two women standing in the road where they explained Horne had become abusive, wanted to take them into the woods "to party," and that Cheryl Todd had felt Horne's gun on the front seat beside her and demanded they be let out of

the car. Yawn took the women back to the restaurant where they decided to continue to hitchhike to Atlanta. Yawn looked for Horne, met him returning to the restaurant, and was told by Horne that he had "taken the wrong road" and that the girls had demanded they be let out. Yawn stated he told Horne "he had better go on home . . .," left him and proceeded to his home in Vidalia. The state introduced a tape of appellant's interrogation following her arrest in which she stated that Horne again approached them as they were walking down the highway, apologized, and persuaded them he would take them as far as he was going toward Atlanta. They entered the car, appellant in the middle on the front seat, and upon reaching an unmarked, paved county road, a shortcut to I-16, appellant stated Horne again became abusive, wanted to party with them, then told them to "get out of the car." She said she saw him reaching for his gun and knew he was a "hit man" sent to kill them, and she grabbed the gun in a struggle with him and killed him. Then she took his money and pistol and together with Cheryl Todd, they ran down the road, attempting to hitchhike to Atlanta. There they said they planned to turn over the pistol and the money to authorities and tell them what happened. The state proceeded upon a theory of murder and armed robbery. The appellant pleaded self-defense.

1. Several enumerations of error challenge the evidence, citing error by the trial court in denying a motion for directed verdict and arguing that the verdicts arrived at, i.e., voluntary manslaughter and armed robbery, were inconsistent and unauthorized because there was no evidence of these crimes or of criminal intent produced by the state. There is no merit to these enumerations of error.

(a) There was ample evidence to support the court's overruling of this motion. Appellant admitted in a statement that she had killed the victim with a revolver he owned which was lying on the seat of his car in a holster during the events of the fatal evening. The victim died from two shots into his head. Appellant stated she then got out of the car, went around to the driver's side of the car and took a wallet and money from Ronnie Horne's

pocket. The deceased had been drinking and appellant claims he had been expressing intentions and committing acts of a provoking nature. There was a struggle and evidence that the appellant had been drinking also. *Bethay v. State,* 235 Ga. 371, 375 (219 SE2d 743) (1975).

(b) Likewise, the verdict of voluntary manslaughter and armed robbery were not inconsistent. "The determinative factor in such cases is whether the acquittal of one charge necessarily includes a finding against a fact that is essential to conviction for the other charge. If so, the evidence is then insufficient to support a verdict of guilty in the convicted charge. . ." *Conroy v. State,* 231 Ga. 472, 475 (202 SE2d 398) (1973). By implication, the jury acquitted appellant of murder, finding no doubt, that evidence of malice aforethought was absent. The question of felony murder was not submitted to the jury. This comports with the finding of voluntary manslaughter; a killing resulting from a sudden, violent and irresistible passion upon serious provocation. There is no finding against a fact essential to the armed robbery charge. See Code Ann. § 26-1902.

2. There is no merit to the enumeration charging there was no evidence to warrant a charge on voluntary manslaughter. Also, there is no merit in the enumeration stating that the circumstantial evidence introduced did not exclude every other reasonable hypothesis. Here there was direct evidence. Appellant admitted killing the victim and taking his wallet.

3. Counsel argues it was error to fail to grant a continuance upon request when the state gave an "unexplained" late list of witnesses to appellant on the first day of trial. The transcript shows the court stated to appellant's counsel, when first apprised of the matter, that it was inclined to grant a delay in the trial so counsel could interview these witnesses and would have done so had counsel made a motion; however, this was not done. Counsel for appellant then informed the court that he had not filed such a motion because he and the state had agreed that the witnesses, when brought to the courthouse "from all over south Georgia" would be made available to counsel for interview at that time. As the trial progressed, the transcript shows the court provided

counsel with all the time necessary to complete these interviews, granting delays in the trial as needed. There was no error under these conditions.

4. Appellant argues the trial court erred when it failed to sustain, appellant's challenge for cause of a prospective juror who had "formed an abiding opinion," forcing the use of one of her peremptory challenges. A review of the entire voir dire of this prospective juror contradicts appellant. The juror was asked: "Do you believe that a person, if necessary, is justified in killing another person if she believes that she is in actual danger of death or rape?" Answer: "The only justification that I have is for anybody to defend themselves if they are attacked, and, of course, if there is any way out, I wouldn't approve of murder." Assuming without deciding that the juror did not approve of killing to avoid rape, there was no burden on the court to dismiss him for cause where the juror had previously stated he had arrived at no opinion as to the guilt or innocence; he believed he could be a fair and impartial juror, making a decision strictly on the evidence; he believed everybody entitled to a fair trial; and he stated he would be objective and follow the law.

5. During the pre-trial hearings, a challenge was made to a "special prosecutor" who was hired by the family and friends of Ronnie Horne to assist the district attorney. The trial court, after hearing extensive argument and review of the law, ruled that the special prosecutor was permitted under Georgia law if he was subject to the direction and control of the district attorney. See *Jackson v. State,* 156 Ga. 842 (120 SE 535) (1923). Following the ruling, the special prosecutor participated in the trial, serving under the district attorney who was counsel-in-chief for the state, and delivered part of the state's closing argument to the jury. There was no error.

Further, appellant argues that her motion for mistrial should have been granted when this special prosecutor said, in effect, that words alone were insufficient to support a plea of self-defense. There was no error, appellant having shown no manifest abuse of discretion by the judge in overruling the motion for mistrial. See *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974).

6. It was not error to refuse a mistrial because the tape of appellant's statement contained admissions indicating other crimes. The tape was played during a motion to suppress. It was played again during the Jackson-Denno hearing. It was played again to the jury during the trial. At that point appellant's counsel for the first time objected to the evidence of prior crimes and moved for a mistrial. Appellant's counsel stated he had not objected previously because he had been granted a continuous objection to the tape. As we view the record the continuous objection was to the introduction of the entire tape, not portions of it. On the motion for mistrial the trial judge stated he would give the jury curative instructions but this was not done until the general charge at the request of appellant's counsel. In our opinion any error here was cured by appropriate instructions. The trial court in its final charge to the jury specifically addressed the portions of the tape objected to and emphatically instructed the jury to disregard them. *Butler v. State,* 226 Ga. 56, 58 (2) (172 SE2d 399) (1970).

7. Appellant further challenges testimony by a police officer and two state troopers from Reidsville indicating the two defendants had been arrested the previous day for drunkenness; that appellant had threatened to kill one of these officers when she resisted arrest; that they had smelled alcohol on the women when they refused to move on from in front of Reidsville prison. This testimony was permissible as part of the chronicle of the events leading up to the shooting of Ronnie Horne the following day. In connection with the trial court's instructions referred to in Division 6 the jury was specifically instructed as to this evidence as follows, "The commission of some other offense would not be considered at all as evidence that they [defendants] would commit another offense or to prejudice them in any manner. The evidence was admitted only for such purposes as it might serve in showing the circumstances leading up to the offense under investigation in this trial."

8. Appellant can not complain of the joint trial which she had requested.

9. The general charge on good character was not error. This was a joint trial and appellant's co-defendant

introduced evidence of good character. In our opinion no harm resulted to appellant.

10. We find no error in the trial court's charge on the law of self-defense.

11. Appellant's enumeration charging the court erred by refusing to determine the voluntariness of appellant's in-custody statements is not meritorious, the transcript showing an exhaustive Jackson-Denno pre-trial hearing and a second Jackson-Denno hearing during trial.

*Judgment affirmed. All the Justices concur.*

SUBMITTED AUGUST 5, 1977 — DECIDED NOVEMBER 1, 1977 — REHEARING DENIED NOVEMBER 29, 1977.

*Randy Bacote, C. B. King,* for appellant.

*Phillip R. West, District Attorney, Arthur K. Bolton, Attorney General, Isaac Byrd, Assistant Attorney General,* for appellee.