## 33716. BROWN v. THE STATE.

MARSHALL, Justice.

This case is here on certiorari. As stated in the Court of Appeals' opinion, the appellant and the deceased became involved in a scuffle, as a result of which the deceased, who suffered from a form of cancer which weakens the bones, received a fracture of the right femur. He subsequently died, and the appellant was indicted for and convicted of involuntary manslaughter. The Court of Appeals affirmed. We granted certiorari for the purpose of reviewing Divisions 1, 2 and 7 (b) of the Court of Appeals' opinion.

1. In Division 1, the Court of Appeals held that the trial court did not err in overruling the appellant's motion to disqualify a special prosecutor employed by the family of the deceased. We agree.

A special prosecutor, who is subject to the direction and control of the district attorney, may be employed by the family of the deceased to assist the district attorney in prosecuting the case. *Woods v. State,* 240 Ga. 265 (5) (239 SE2d 786) (1977); *Jackson v. State,* 156 Ga. 842 (120 SE 535) (1923). The fact that the special prosecutor represents the deceased's family in civil litigation arising from his death is no ground for disqualification. *Park v. State,* 225 Ga. 618 (1b) (170 SE2d 687) (1969).

Since the appellant made no request that the jury be informed that the victim's family had hired the special prosecutor, we agree that the failure to make this disclosure to the jury provides no ground for reversal of the conviction.

2. In Division 2, the Court of Appeals held that the failure of the prosecution to furnish the appellant with a list of several state's witnesses until immediately prior to

trial did not constitute grounds for a new trial, since the appellant had waived her demand for a list of witnesses. For reasons which follow, we are unable to agree with this holding.

Several months prior to trial, the appellant on two different occasions filed demands for a list of all state's witnesses. See Code Ann. § 27-1403 (Const. 1976, Art. I, Sec. I, Par. XI; § 2-111; Cobb, 834; Ga. L. 1966, pp. 430, 431). On the morning of the trial, the appellant formally entered a plea of not guilty in the space provided on the indictment for entry of the plea; however, the appellant did not mark through the language printed on the indictment under which the defendant waives a copy of the indictment, list of witnesses, and formal arraignment.

Prior to the empaneling of the jury, the prosecutor presented the appellant with a list of supplementary witnesses. The appellant sought to have the witnesses disqualified, in accordance with the provisions of Code Ann. § 27-1403. In the alternative, she sought a continuance in order to interview the witnesses. The trial court denied the relief sought, but offered defense counsel an opportunity to interview the witnesses outside of the jury's presence.

The Court of Appeals found this eleventh-hour proffering by the prosecution of a supplementary list of witnesses, without any claim that the evidence was newly discovered, to be questionable. Citing *Butler v. State,* 139 Ga. App. 92 (1) (227 SE2d 889) (1976), the Court of Appeals stated that the remedy offered by the trial court was authorized by law. However, the Court of Appeals stated that the remedy was inadequate here where two of the five new witnesses were medical witnesses whose expert testimony was crucial to the state on a highly important issue: the cause of death. Citing *Fishman v. State,* 128 Ga. App. 505 (4) (197 SE2d 467) (1974), the Court of Appeals stated that it would find these factors sufficient to demand a new trial had it not been for the appellant's waiver of her right to a list of witnesses. Citing *White v. State,* 137 Ga. App. 9 (2) (223 SE2d 24) (1975) and *Parr v. State,* 117 Ga. App. 484 (1) (160 SE2d 865) (1968), the Court of Appeals held that such a waiver is effective

and the state is entitled to rely on it.

In the present case, the purported waiver of the demand for a list of witnesses did not occur until immediately prior to trial. Therefore, the state could not have relied on it. Prior to commencement of trial, defense counsel made known to the trial court that he did not intend to waive the appellant's demand for a list of witnesses and that he had not marked through the waiver language on the indictment because he thought that the pending demand for a list of witnesses made it unnecessary. Under these circumstances, the trial court should have allowed the appellant to withdraw what was clearly an unintentional and inadvertent waiver.

We accept the Court of Appeals' finding that allowing the appellant an opportunity to examine the witnesses outside of the jury's presence was an inadequate means of curing the state's failure to comply with the defendant's demand for a list of witnesses. Therefore, we hold that a new trial is required.

3. In Division 7 (b), the Court of Appeals held that defense counsel was privileged to refuse to testify in response to a subpoena served on him by the defendant in connection with her motion for new trial. In the subpoena, the defendant sought to show that defense counsel had rendered ineffective assistance of counsel in his trial preparation. The Court of Appeals held that defense counsel was privileged to refuse to answer these questions under Code § 38-1205, which provides that: "No party shall be required to testify as to any matter which may criminate or tend to criminate himself, or which shall tend to work a forfeiture of his estate, or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family." Code § 38-1711 provides: "A witness shall be relieved from testifying as to the same matters hereinbefore specified in relation to a party making discovery."

In *Brooks v. State,* 233 Ga. 524 (2) (212 SE2d 355) (1975), this court construed the foregoing testimonial privilege, in accordance with the great weight of authority, to require the witness to answer questions tending to bring infamy, disgrace or public contempt upon himself or his family, if the proposed evidence is material

to the issues in the case; it is only where the proposed answer has no effect on the case except to impair the witness' credibility that the witness may fall back on the privilege. Accordingly, we hold that an attorney may be required to answer questions which are intended to establish that the attorney rendered ineffective assistance of counsel, even though the answers to these questions may tend to bring him into public disgrace or contempt. The materiality of the evidence outweighs the testimonial privilege.

Since we have ordered a new trial in Division 2, supra, it is unnecessary for the trial court to reconsider the appellant's motion for new trial. The judgment of the Court of Appeals, affirming the appellant's conviction, is accordingly reversed.

*Judgment reversed. All the Justices concur, except Undercofler, P. J., who dissents from Divisions 2 and 3 and the judgment, and Jordan and Bowles, JJ., who dissent from Division 3 but concur in the judgment.*

ARGUED SEPTEMBER 20, 1978 — DECIDED NOVEMBER 7, 1978 — REHEARING DENIED NOVEMBER 21, 1978.

*Fierer & Devine, Robert G. Fierer, Bruce H. Morris, Walter James Gordon,* for appellant.
*Cleve Miller, District Attorney,* for appellee.

HILL, Justice, concurring.

The defendant, Ann Anderson Brown, was indicted on October 5, 1976, for involuntary manslaughter of County Commissioner Bobby Joe Whitworth which arose from a battery upon him on May 26, 1976. His death occurred on September 13, 1976, and Mrs. Brown was tried and found guilty in March, 1977.

On November 4, 1977, after indictment and before trial, the lawyer who appeared as special prosecutor at the trial wrote the defendant's sister a letter reading in part as follows:

"As you are aware Bobby Joe Whitworth received injuries at the hands of your sister, Mrs. Ann Anderson Brown, who was acting as your agent at the time your

sister Ann inflicted these injuries on Mr. Bobby Joe Whitworth.

"The medical, doctor, ambulance, emergency room and hospital expenses for treatment of these injuries Ann inflicted upon Bobby Joe Whitworth have run approximately $13,500.00 up through September 13, 1976 when Mr. Whitworth died as a result of referenced injuries. The burial and funeral expenses at Strickland Funeral Home came to $2,635.08. Mr. Bobby Joe Whitworth was totally disabled from May 26, 1976 until the time of his death September 13, 1976 and this gives rise to an item of special damages in the amount of $2,994.38 as loss of earnings during this period of total disability.

"Mrs. Sarah Sanders Whitworth was forced to stop work at Hart County Hospital from May 26, 1976 up to the present time so that she could see after her injured husband. Her salary at the hospital was $112.00 per week and she lost a total of fifteen and one-half weeks. This gave rise to a loss of $1736.00 loss of earnings by Mrs. Whitworth.

"Mr. Whitworth suffered great pain of mind and body as a result of the injuries Ann inflicted upon him. Under Georgia Law the compensation for such is left to the enlightened conscience of fair and impartial jurors. Mrs. Sarah Sanders Whitworth has a civil action claim for the wrongful death of her late husband. . .

"I would suggest that you immediately notify your homeowner insurer as well as any other insurer affording liability insurance coverage that may be available to you or to Ann or to both of you. I will discuss settlement of these civil action claims with you or your representative."

At the time of trial of the criminal case, this attorney was representing the deceased's widow in her civil wrongful death claim against the defendant. Undoubtedly that civil representation was on a contingent fee basis as is customary in such cases. Anyone who has a feeling for such things knows that an acquittal would have adversely affected the civil claims whereas the conviction enhanced the value of those claims. Thus, indirectly, the special prosecutor had a financial interest in the outcome of the

criminal case.

In the past, there was no prohibition on special prosecutors being employed by the victim's family to assist the district attorney in the prosecution, so long as the special prosecutor was subject to the direction and control of the district attorney. *Woods v. State,* supra, cited in the main opinion.

However, after the trial in *Woods,* supra, and after the first trial in this case, the General Assembly enacted and the Governor approved Ga. L. 1977, pp. 1257-1266, which was a comprehensive revision of Code Chs. 24-29 relating to district attorneys. In addition to continuing the prohibition on district attorneys engaging in the private practice of law (Sec. 2; Code § 24-2905), the 1977 Act provided that attorneys employed by the district attorney and compensated from state funds shall not engage in the private practice of law (Sec. 8; Code § 24-2919 (4)) and provided that private attorneys acting as district attorneys pro tem appointed by the presiding judge shall be subject to all laws governing district attorneys (Sec. 7, Code § 24-2914). Now we should not expect that the law prohibiting private practice by district attorneys would prohibit a private attorney acting as district attorney pro tem from engaging in the private practice of law. However, we should apply the law so as to prohibit a private attorney acting as or assisting a district attorney from engaging in the private practice in the very case in which he is acting as or assisting the district attorney. In my view, the 1977 law changes the rules as to special prosecutors as to trials after its enactment.

The duty of a prosecutor is to seek justice, not merely to convict. EC 7-13, 238 Ga. 792. His duties differ from those of the private practitioner. EC 7-13, supra. He has a duty to make disclosures to the defendant in a criminal case which are not constitutionally required in a civil case. See United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976). If we do not interpret our 1977 law as suggested above, I foresee that we may see challenges based upon the proposition that fee paid prosecutors violate due process just as fee-paid judges violate due process. See Connally v. Georgia, 429 U. S. 245 (97 SC

546, 50 LE2d 444) (1977).

Because this case was tried the first time before the 1977 Act became law, I concur in the judgment.