## S94A0181. FOSTER v. THE STATE.

(444 SE2d 296)

HUNT, Chief Justice.

Ticey Foster was convicted of the felony murder and voluntary manslaughter of Tiffany Harderson and for the possession of a firearm during the commission of a crime. The trial court merged the voluntary manslaughter conviction and sentenced Foster to life in prison for felony murder and to a term of years for the possession of a firearm during the commission of a crime.[1] We affirm.

1. On appeal, Foster's sole contention is that the trial court should have sentenced him for voluntary manslaughter instead of felony murder. We disagree. Foster and Anthony Perry were engaged in a shoot-out at a local carwash when Foster, firing at Perry, accidentally struck and killed the victim, an innocent third party. The trial court charged the jury on voluntary manslaughter, transferred intent and felony murder. Assuming that a charge on voluntary manslaughter was authorized,[2] the trial court properly merged the conviction for voluntary manslaughter into the felony murder conviction. Contrary to Foster's argument, our holding in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992) does not apply here. In *Edge* we dealt with the problem when evidence is presented that would support both a voluntary manslaughter and felony murder conviction based on an aggravated assault *against the homicide victim*. Where there is evidence that an aggravated assault against a homicide victim was provoked *by*

---

[1] The crimes occurred on March 29, 1993. Foster was indicted on April 29, 1993. A jury found Foster guilty on August 31, 1993. The trial court sentenced Foster on September 8, 1993. Foster filed his notice of appeal on October 8, 1993. The court reporter certified the transcript on November 3, 1993. The appeal was docketed in this court on November 29, 1993, and orally argued on February 15, 1994.

[2] We seriously question whether a charge on voluntary manslaughter is even authorized under the circumstances presented here. Traditionally, the provocation which would authorize such a charge must arise from some action of the *deceased*, or at least that the defendant reasonably so believed. Model Penal Code & Commentary, § 210.3, p. 57 (1980). Our voluntary manslaughter statute, OCGA § 16-5-2 (a), does not specifically so require, although the modern criminal codes of some states do. See generally LaFave & Scott, Substantive Criminal Law, Vol. 2, pp. 268, 269, n. 103, § 7.10 (g) (1986). We recognize there is authority which would allow a voluntary manslaughter charge for the homicide of an unintended victim, based on the concept of a "transferred [mitigated] intent" from the intended victim to an innocent third party. Id. at p. 269, n. 101. We also recognize that this Court and the Court of Appeals have allowed such a transfer of a mitigated intent from the intended victim to an innocent third party. See, e.g., *McLendon v. State*, 172 Ga. 267 (4) (157 SE 475) (1931); *Hart v. State*, 135 Ga. 356, 357 (69 SE 530) (1910); *Coker v. State*, 209 Ga. App. 142, 143 (433 SE2d 637) (1993). However, the cases from this court generally were issued prior to our current felony murder statute. The current statute, OCGA § 16-5-1 (c), makes a homicide in the commission of *any* felony, including an aggravated assault, felony murder. In light of our current felony murder statute, and our limited holding in *Edge*, and to comport with the general scheme of our homicide statutes, it appears that the voluntary manslaughter statute, OCGA § 16-5-2 (a) should be construed so as to authorize a conviction for that form of homicide only where the defendant can show provocation by the homicide victim.

*the victim*, and felony murder is charged with the underlying felony being aggravated assault, our holding in *Edge* requires that the trial court instruct the jury so as to ensure adequate consideration of charges for both voluntary manslaughter and felony murder. Id. at 867. In *Edge*, we applied a modified "merger doctrine" to the foregoing limited circumstances, because to do otherwise would eliminate voluntary manslaughter as a separate form of homicide. Id. at 866. We chose a course between a strict construction of our felony murder statute, OCGA § 16-5-1 (c) (authorizing a felony murder conviction where a defendant, while in the commission of "a felony, causes the death of another") and the full merger rule applied in most other states, which would preclude a felony murder conviction based on *any* aggravated assault by the defendant on the victim. That is, as we stated, our holding in *Edge* precludes a felony murder conviction only where it would "prevent an otherwise warranted verdict of voluntary manslaughter." Id. at 867. Neither the modified merger rule which we adopted, nor the full merger rule adopted in other jurisdictions, concerns the situation here — accidental death of one resulting from the aggravated assault on another. The merger rule, and the limited merger rule adopted by us in *Edge* apply only where the aggravated assault is perpetrated against the homicide victim and is an integral part of the killing and when the evidence authorizes a voluntary manslaughter charge. "[T]his problem does not exist if the underlying felony is independent of the killing itself . . . or *even an assault that is directed against someone other than the homicide victim. . . .*" (Emphasis supplied.) Id. at 867, n. 3.

Our felony murder statute is very broad, authorizing a conviction where a defendant causes the death of another while in the commission of *any* felony. In *Edge*, we limited the full scope of felonies that may be used to support a felony murder conviction to exclude the use of aggravated assault against the homicide victim only where the defendant's intent in assaulting the victim is mitigated so that the homicide would constitute voluntary manslaughter. We decline to extend *Edge* to the circumstance here.

Nor is there a problem of inconsistent verdicts in this case. In *Edge*, we considered the *possibility* of inconsistent felony murder and voluntary manslaughter verdicts only where the underlying assault for felony murder was provoked by the homicide victim. Where the aggravated assault is not so provoked, and, assuming a voluntary manslaughter verdict is authorized, the voluntary manslaughter verdict and felony murder verdict are not inconsistent, see *Woods v. State*, 240 Ga. 265, 269 (1) (b) (239 SE2d 786) (1977), and the voluntary manslaughter verdict would, properly, be merged as it was in this

case.[3]

2. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of felony murder and possession of a firearm during the commission of a crime, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Sears-Collins, J., who dissents.*

SEARS-COLLINS, Justice, dissenting.

I cannot agree with the majority's implication, see footnote 2 of majority opinion, that voluntary manslaughter is not an authorized verdict when a defendant is reasonably provoked by one person and shoots at that person, accidentally killing a bystander. Nor can I agree with the majority's holding that the principles of *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), do not apply to this case. I therefore dissent.

1. I first take issue with footnote 2 of the majority opinion in which the majority questions whether Foster was even entitled to a charge on voluntary manslaughter. I believe that a holding that he was not would be contrary to the law of this State and a majority of jurisdictions, and would be untenable in view of the rule that a criminal statute must be construed most favorably to an accused.

When A has been reasonably provoked by B into a passion to kill B, and A shoots at B but instead hits and kills innocent bystander C, the rule in what appears to be a majority of jurisdictions is that A is guilty of voluntary manslaughter. See LaFave & Scott, Substantive Criminal Law, Vol. 2, p. 268, § 7.10 (g) (1986); 40 CJS 457, Homicide, § 79 (1991). In fact, LaFave endorses this result, stating that "A's purpose has been to act against the individual thought to be responsible for his outrage, and thus there are mitigating circumstances which should be taken into account." Id. at 269. Accord Model Penal Code & Commentary, p. 61, § 210.3 (1980). LaFave recognizes that other states preclude voluntary manslaughter in the above scenario, but notes they have done so by statutes specifically limiting voluntary manslaughter to situations in which B is killed.

Georgia's voluntary manslaughter statute is not so limited, OCGA § 16-5-2, and to construe it so as not to give the defendant the benefit of his mitigated intent would be contrary to the rule that criminal statutes must be construed most favorably to the accused. See *State v. Crane*, 247 Ga. 779, 780 (279 SE2d 695) (1981). In fact,

---

[3] While the verdicts are not inconsistent, merger is required to avoid double jeopardy. OCGA § 16-1-7 (a).

this State has adopted the construction advocated by LaFave. See *Coker v. State*, 209 Ga. App. 142, 143 (433 SE2d 637) (1993); *McLendon v. State*, 172 Ga. 267 (4) (157 SE 475) (1931); *Strickland v. State*, 9 Ga. App. 552 (1) (71 SE 919) (1911); *Hart v. State*, 135 Ga. 356 (69 SE 530) (1910).

The majority implies that the fact that this Court's cases that have allowed the defendant the benefit of his mitigated intent were decided before our current felony murder statute was enacted in 1968 as part of the revisions to our Criminal Code means that those cases no longer need to be followed. However, our felony murder statute, as enacted in 1968, did not change the substantive law of felony murder. See Molnar, Georgia Criminal Law, Homicide, p. 559, § 51 (1990); Note, Felony Murder in Georgia: A Legal Anachronism, 9 Ga. State Bar Journal 462, 474-477 (1973). Before 1968, a person could be convicted of murder if he killed someone in the commission of "a crime punishable by death or imprisonment in the penitentiary." Id. at 559; Code of 1933, § 26-1009. Under our current statute, a person is guilty of murder if he kills someone in the commission of "a felony." As "a crime punishable by death or imprisonment in the penitentiary" was the definition of a felony under pre-1968 law, see Code of 1933, § 26-101, the old statute and the new are substantively the same for our current purposes. See Note, supra at 474-477. I believe the majority thus errs in suggesting that our older cases are no longer good law on the basis of the language in our new felony murder statute.

Further, to hold that Foster could not have the benefit of a mitigated state of mind would produce an absurd result. Foster could have been indicted for the malice murder of Harderson under the theory that he intended to kill Perry and that his act of killing Tiffany Harderson should be judged by the intent with which he shot at Perry. *Moore v. State*, 205 Ga. 37, 46-47 (52 SE2d 282) (1949); *James v. State*, 83 Ga. App. 847, 852-853 (65 SE2d 55) (1951).

> The thing done follows the nature of the thing intended to be done and the guilt or innocence of the slayer depends upon the same considerations which would have governed had the shot killed the person against whom it was directed.

*James*, 83 Ga. App. at 852. Accord *Moore*, 205 Ga. 47. Yet, at a trial for malice murder on the theory that Foster had the intent to kill Perry and that his killing of Harderson should be judged by that intent, the idea espoused by the majority in footnote 2 would preclude Foster from arguing that his intent was mitigated by Perry's conduct. The State should not be able to judge Foster by what it contends was his intent and then preclude Foster from putting forth his evidence regarding his mental condition. Such a result is not only illogical but

violates notions of fundamental fairness.

I do not dispute that this case presents a classic case of felony murder. What I do dispute is the idea that voluntary manslaughter as a defense to murder was not available to Foster. In fact, the evidence warranted a charge on voluntary manslaughter and the jury returned a verdict of voluntary manslaughter, thus presenting an *Edge* problem under the unique circumstances of this case.

2. Before reviewing the principles of *Edge*, I must first recount the charges against Foster, as well as the findings of the jury. Foster was indicted as follows:

Count 1:  For the felony murder of Harderson, with the underlying felony being the aggravated assault on Harderson, as alleged in Count 3 of the indictment.

Count 2:  For the felony murder of Harderson, with the underlying felony being the aggravated assault on Perry, as alleged in Count 4 of the indictment.

Count 3:  For the aggravated assault of Harderson, committed by making an assault on Harderson with a deadly weapon.

Count 4:  For the aggravated assault of Perry, committed by making an assault on Perry with a deadly weapon.

Foster was convicted on Count 1 of voluntary manslaughter; on Count 2 of felony murder; and on Counts 3 and 4 of aggravated assault. The court merged the voluntary manslaughter and aggravated assault convictions into the felony murder conviction, sentencing Foster to life imprisonment.

Foster contends that his conviction and sentence for felony murder violate the principles of *Edge* and therefore cannot stand. More specifically, Foster contends that there was actually one aggravated assault, the shooting at Perry; that that one assault, through the doctrine of transferred intent, formed the basis of the felony murder, voluntary manslaughter, and aggravated assault charges relating to Harderson; that by its finding of voluntary manslaughter on Count 1 of the indictment, the jury found that the one aggravated assault was mitigated; and that therefore under the theory of *Edge*, the felony murder conviction cannot stand. I agree with Foster's contention.

*Edge*, 261 Ga. at 865, involved a homicide in which an assault on one victim formed the basis of the charge on felony murder and voluntary manslaughter. We held that where the evidence warrants a charge on voluntary manslaughter and felony murder and where a jury returns a verdict on voluntary manslaughter and felony murder, the felony murder verdict cannot stand because,

[i]f the jury finds voluntary manslaughter, it necessarily

finds the felonious assault was mitigated by provocation, and committed without the mens rea essential to impute malice to the killing. Thus, the felony of assault in that instance cannot support a felony murder conviction because there is no malice to be transferred.

Id. at 866.

The issue presented by this case is whether, as the State contends, any *Edge* concerns are alleviated because the aggravated assault on Harderson formed the basis of the voluntary manslaughter conviction, while the aggravated assault on Perry formed the basis of the felony murder conviction. As we said in *Edge*, a verdict of voluntary manslaughter would not preclude a verdict of felony murder if the underlying felony is "independent of the killing itself, such as burglary, robbery, or even an assault that is directed against someone other than the homicide victim." Id. at 867, fn. 3.

Although normally two independent aggravated assaults would alleviate any *Edge* concerns, the assault charge as to Harderson and the assault charge as to Perry are not independent for purposes of *Edge* because only one act and one intent formed the basis of the two assault charges. As Harderson was on the front porch of a residence some 100 yards from the place of the shooting and was not aware a shooting was about to occur, the aggravated assault of Harderson was predicated on the transfer of the intent from the assault on Perry to Harderson. Of necessity, the trial court charged the jury on the doctrine of transferred intent and instructed them that it applied to the charges of felony murder, voluntary manslaughter, and aggravated assault. See *Fussell v. State*, 187 Ga. App. 134, 136 (4) (369 SE2d 511) (1988).[4] Thus the voluntary manslaughter and felony murder convictions were based on the same intent, and the jury's finding of voluntary manslaughter means that the jury necessarily found that the "felonious assault was mitigated by provocation, and committed without the mens rea essential to impute malice to the killing." *Edge*, 261 Ga. at 866. The rationale of *Edge*, then, leads to the conclusion that Foster's felony murder conviction cannot stand.

Accordingly, although I recognize the terrible and tragic result of Foster's crime, I would reverse that conviction. Moreover, because the

---

[4] Regarding the doctrine of transferred intent, the Court stated in *Fussell* that [w]hen an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it. "In legal contemplation, the intent follows the act through to its legitimate results." *Cook v. State*, 255 Ga. 565, 566 (1) (340 SE2d 891) (1986). *Fussell*, 187 Ga. App. at 136.

evidence authorized the conviction for voluntary manslaughter, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), I would remand the case for the trial court to sentence Foster for the offense of voluntary manslaughter.

DECIDED JUNE 13, 1994 —
RECONSIDERATION DENIED JULY 14, 1994.

*Emerson Carey, Jr.,* for appellant.

*J. Tom Morgan, District Attorney, Robert E. Statham III, Thomas S. Clegg, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for appellee.