*CJP Supp. 57 Opinion
BONNER, Chairperson.
This disciplinary matter concerns Judge George W. Trammell III (retired), formerly a judge of the Los Angeles County Superior Court. The proceedings arose from allegations that Judge Trammell entered into a clandestine intimate relationship with one of three codefendants, that he continued to preside over their cases, that he allowed that relationship to influence his actions and that he engaged in numerous improper ex parte communications. The Commission on Judicial Performance (Commission) concludes that Judge Trammell committed willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Commission censures Judge Trammell and bars him from receiving assignments, appointments or reference of work from any California state court.
PROCEDURAL HISTORY
Judge Trammell served on the Los Angeles County Municipal Court from May 25, 1971, until January 31, 1988, and served on the Los Angeles County Superior Court from January 31, 1988, until January 10, 1997, when he retired.
*CJP Supp. 58 The Commission’s investigation of allegations concerning Judge Trammell led to the filing on February 4, 1998, of a notice of formal proceedings. Judge Trammell declined to file a verified answer, citing the Fifth Amendment of the United States Constitution.
As provided for by rule 121(b) of the Rules of the Commission on Judicial Performance, the Supreme Court appointed three special masters to conduct an evidentiary hearing and to prepare a written report.[1] Judge Trammell participated in the initial proceedings before the special masters, but declined to participate in the evidentiary hearing that was held on July 20 and 21, 1998. On September 22, 1998, the special masters filed their final report with the Commission.
Judge Trammell declined to file a brief on the special masters’ report, as provided by rule 130 of the Rules of the Commission on Judicial Performance, and failed to respond to a letter from Commission counsel providing him with an opportunity to be heard orally before the Commission, as provided by rule 132 of the Rules of the Commission on Judicial Performance.[2] Accordingly, the matter was submitted to the Commission on December 9, 1998, without oral presentations. Nine members of the Commission participated in the consideration of the case.[3]
FINDINGS
In the spring of 1995, Ming Jin (Jin), Pifen Lo (Lo), Jin’s ex-wife with whom he lived with their three children, and Yu Chang Chu (Chu), apparently their live-in babysitter and Jin’s lover, were arrested. The case was assigned to Judge Trammell. The charges included two counts of kidnapping for purposes of extortion, assault of one victim with a semiautomatic firearm, several counts of robbery, several counts of laundering money, possession of explosives, possession of silencers, possession of counterfeit computer software, and three counts of child endangerment because the explosives and guns were in the house where the three children lived. The most serious charges were lodged against Jin and Chu and carried punishments of life *CJP Supp. 59 sentences without parole. The charges against Lo exposed her to a potential sentence of 12 years.
On January 18, 1996, Judge Trammell accepted Lo’s plea of no contest to certain nonviolent felonies. On April 26, 1996, a sentencing hearing was held. Judge Trammell suspended imposition of judgment and sentence and placed Lo on probation for five years with the conditions, among others, that she pay a fine of $100,000, make restitution in the amount of $400,000 and submit to psychiatric and psychological counseling.
Several days later, Lo returned to court to pick up some papers connected with her probation. When informed by the bailiff that Lo was there, Judge Trammell invited her into his chambers and spoke to her with only her brother-in-law present.
In April 1996, Judge Trammell had also rejected motions to suppress evidence which Chu and Jin had attempted to file. Subsequently, Jin pled guilty to the nonviolent felonies and these charges were dismissed as to Chu. Judge Trammell then presided over a jury trial of Jin and Chu on the violent felony charges. In early July, both were convicted on the violent felony charges. Jin and Chu filed motions for new trial that were still pending when Judge Trammell left the bench in January 1998.
In late August and early September 1996, Judge Trammell contacted a deputy sheriff because of a number of unusual occurrences which he felt were designed to intimidate him[4] and because he had received birthday cards from Jin, Chu and Lo, and wanted to know how they knew his birth date. The deputy sheriff offered to install a surveillance camera at the judge’s residence, but the judge declined stating that he and a prior live-in girlfriend had purchased a camera. The deputy sheriff testified that the prior girlfriend denied that they had purchased a camera.
On September 13, 1996, Judge Trammell asked Chu’s attorney to appear before him. When she arrived, he told her in the presence of the district attorney that he was unhappy with her performance and intended to appoint an attorney to investigate whether she rendered ineffective assistance. The attorney requested to be relieved as counsel for Chu, but Judge Trammell denied the request.
*CJP Supp. 60 On September 20, 1996, Chu was brought from jail to Judge Trammell’s chambers by his bailiff. Judge Trammell then met with Chu in his chambers and discussed her potential sentence and Jin. Chu allegedly indicated that she would like to have a vegetarian diet and would like to attend a pottery class.
Lo testified before the special masters that on September 18, 1996, Judge Trammell contacted her by telephone and asked her to come to his chambers. She went to the courthouse and waited outside Judge Trammell’s chambers until he ushered her into his room. Lo testified that Judge Trammell asked her if she had sent the birthday cards and she admitted that she had. Lo also testified that they discussed Jin and his possible sentence. She further testified that Judge Trammell complimented her, touched her, and kissed her. The meeting ended when someone sought entry into the judge’s chambers and Judge Trammell let Lo out a side door.
Lo testified that on Saturday, September 21, 1996, Judge Trammell contacted her by telephone and asked her to come to his house. On Sunday, September 22, 1996, Lo went to Judge Trammell’s house. They talked for awhile, they discussed Jin, and according to Lo, engaged in sexual intercourse over her objections.
Lo testified that from then through December 1996, she visited Judge \Trammell at least once a week and that they often engaged in sexual intercourse. During this period of time, Judge Trammell and Lo spoke to each other frequently by telephone. In their conversations Judge Trammell allegedly discussed how he might be able to terminate Lo’s probation after only a year and advised her on how she might seek the return of property seized by the police, including a Mercedes automobile. At some point in time, Lo obtained a pager and Judge Trammell left numerous coded messages on Lo’s pager.
During this time, Judge Trammell continued to preside over matters concerning Lo, Chu and Jin. Chu informed her attorney of her September 20 meeting with Judge Trammell, and the attorney prepared a motion to disqualify Judge Trammell. Jin also filed a motion to disqualify Judge Trammell.
On October 4, 1996, Chu’s attorney received a phone call from Judge Trammell’s clerk instructing her to prepare a motion to reduce Chu’s bail to $45,000. On October 9, 1996, the attorney filed the motion to reduce bail.
The motions to disqualify and the motion for bail were set for hearing on October 18, 1996. When Chu’s attorney arrived at the courthouse she was *CJP Supp. 61 told that Chu wished to see her. The attorney consulted with Chu who insisted that she withdraw the motion to disqualify. The attorney withdrew the motion and Jin’s counsel withdrew his motion to disqualify. Judge Trammell nonetheless addressed the motions, denied the allegations in the motions, and declined to recuse himself. Judge Trammell did not disclose his relationship with Lo. At one point during the hearing, Judge Trammell, while accusing Jin of having others, including Lo, do his bidding, disingenuously commented “whatever the name of your wife or ex-wife.” Judge Trammell also granted Chu’s motion for bail, reducing it to $25,000 purportedly to allow her to attend the pottery class, should she not be able to raise the bail.
At the end of October 1996, Judge Trammell called an indigent criminal defense appointment panel and requested that a particular attorney be appointed to represent Lo. The judge did not inform Lo’s attorney of record of this request. When the attorney telephoned Judge Trammell’s clerk to determine the nature of the appointment, Judge Trammell spoke directly to the attorney. Judge Trammell reportedly told the attorney that Lo had written a letter to the court requesting the return of property seized in conjunction with the criminal case and he wanted the attorney to prepare a motion for return of property for Lo. The attorney filed a motion for return of property. The letter written by Lo, however, was dated November 6, after the conversation between the attorney and the judge.
On December 5, 1996, Judge Trammell contacted Lo’s probation officer, purportedly to inquire about a status report. Judge Trammell allegedly told the officer that he thought that the requirement of psychological counseling was no longer necessary and that Lo’s probation need not continue for the full five years.
On December 6, 1996, Judge Trammell heard argument on the motion for return of property. Prior to the hearing, before the district attorney arrived, Judge Trammell informed Lo’s appointed counsel that the district attorney intended to file amended forfeiture papers. At the hearing, the district attorney argued against the motion, Judge Trammell responded to the arguments, and then ordered the return of most of the property.
Lo’s appointed attorney testified that several days later, Judge Trammell telephoned him to tell him that he had heard that the district attorney did not intend to comply with his order to return the property.[5] The attorney further *CJP Supp. 62 testified that in a telephone conversation Judge Trammell told him that Jin and Chu had filed motions for a new trial based on ineffective assistance of counsel, that he thought they were well taken, and that he believed Lo’s case had been “over filed” and that she had “over pled.” The judge told the attorney that when Lo approached the one-year anniversary of her probation, he wanted the attorney to file a motion to terminate probation, which he would be inclined to grant.
On January 2, 1997, jail personnel intercepted correspondence from Jin to Lo which contained a “petition” alleging sexual misconduct by Judge Trammell. The document alleged, among other things, that Lo had collected pubic hair from the judge as proof of their sexual relationship. On January 6, 1997, two deputy sheriffs and their supervisor met with Judge Trammell and showed him the intercepted “petition.” When asked, Judge Trammell admitted that Lo had been to his house once or twice, that he had called her four or five times and had taken her to dinner. He admitted telling her that he loved her, but denied having had sexual intercourse with her.
On January 6, 1997, without notice to counsel, Judge Trammell issued an order canceling the probation condition requiring Lo to receive counseling.
On January 9, 1997, Judge Trammell was served with a search warrant for his home and chambers. The following day he retired from judicial office.
FINDINGS OF FACT
The special masters found clear and convincing evidence[6] supporting four findings of fact and the Commission adopts those findings of facts.
First, the Commission finds that Judge Trammell had a sexual relationship with Lo from mid-September 1996 through early January 1997. During this period, Lo was Judge Trammell’s probationer and a codefendant of Chu and Jin, both of whom had been convicted of felony charges and were awaiting Judge Trammell’s rulings on their motions for a new trial and sentencing. The evidence supporting the existence of the sexual relationship includes Lo’s testimony, telephone billing records showing numerous calls between Judge Trammell and Lo, four telephone conversations between Judge Trammell and *CJP Supp. 63 Lo (which Lo taped), and Judge Trammell’s admission to a deputy sheriff of a romantic, albeit not sexual, relationship with Lo.
Second, the Commission finds that Judge Trammell actively endeavored to keep the existence of his relationship secret. Despite presiding over a number of hearings in matters concerning Lo, Chu and Jin, Judge Trammell did not mention his relationship with Lo, and at one point, gave the impression that he did not even know her name. This finding is also supported by Lo’s testimony, by Judge Trammell’s use of Lo’s pager to send coded messages, and the deputy sheriff’s testimony that Judge Trammell declined to have a surveillance camera installed at his residence, stating incorrectly that he already had such a camera.
Third, the Commission finds that Judge Trammell misused his judicial office in an attempt to further his relationship with Lo. He counseled Lo on how to seek the return of seized property, arranged for the appointment of an attorney specifically to assist Lo in securing the return of property, and then ruled on the motion. Both the attorney and Lo’s probation officer testified as to Judge Trammell’s intent to reduce Lo’s term of probation from five years to one. Finally, just before he resigned from the bench, Judge Trammell, on his own motion and without notice to the district attorney or counsel, ordered the condition of probation requiring Lo to submit to psychological counseling eliminated.
Fourth, the Commission adopts the special masters’ findings that Judge Trammell engaged in at least 13 improper ex parte communications with Lo and Chu, defendants in criminal proceedings over which he was presiding, and with attorneys involved in those proceedings. Among the improper ex parte communications are his April 29 and September 18, 1996 meetings with Lo in his chambers, his September 20, 1996 meeting in his chambers with Chu, his September 22 meeting with Lo at his home, his numerous telephone conversations with Lo in which he discussed pending matters in Lo’s and Jin’s cases, his instruction to Chu’s attorney to prepare a motion for bail, and his telephone conversations to the attorney he appointed to represent Lo on her motion for return of property.
CONCLUSIONS OF LAW
The Commission concludes, as did the special masters, that Judge Trammell engaged in willful misconduct in carrying on, and actively concealing, a sexual relationship with Lo, while she was a probationer under his supervision and he was presiding over the criminal cases against her two codefendants, and in using his judicial office to further his relationship with Lo.
*CJP Supp. 64 There are three elements of willful misconduct: (1) “ ‘unjudicial conduct,’ ” (2) “ ‘committed in bad faith,’ ” (3) “ ‘by a judge acting in his judicial capacity.’ ” (Dodds v. Commission on Judicial Performance (1995) 12 Cal.4th 163, 172 [48 Cal.Rptr.2d 106, 906 P.2d 1260].) Here Judge Trammell acted in his judicial capacity in presiding over hearings and ruling on motions concerning Lo, Chu and Jin while he had an undisclosed sexual relationship with Lo. His actions were in bad faith as he acted for a corrupt purpose[7]—to further his relationship with Lo.
“Unjudicial conduct” is measured by reference to the California Code of Judicial Ethics and Judge Trammell’s conduct violated a number of canons. He violated canon 1 of the California Code of Judicial Ethics by compromising the independence and integrity of his office by presiding over criminal proceedings while maintaining a clandestine sexual relationship with one of the defendants. He violated canon 2A by engaging in personal conduct that created doubt as to his impartiality in respect to each of the rulings in the criminal proceedings (which followed the commencement of the relationship). Judge Trammell violated canon 2B(1) by allowing his relationship with Lo to influence his judicial conduct and judgment and by conveying the impression that Lo was in a special position to influence him. He violated canon 3E by failing to disclose his relationship with Lo and failing to disqualify himself, and he violated canon 4A by participating in a clandestine relationship with Lo while she was his probationer and he was presiding over proceedings against her codefendants.
The Commission also agrees with the special masters that all of Judge Trammell’s ex parte communications were violations of California Code of Judicial Ethics canon 3B(7)’s prohibition against ex parte communications, and that most of the ex parte communications constituted willful misconduct or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Judge Trammell’s ex parte communications with Lo concerning the return of Lo’s property and all of his ex parte communications with Lo’s attorney constitute willful misconduct as they were made in his judicial capacity, were made in bad faith (for the corrupt purpose of furthering his relationship with Lo), and violated California Code of Judicial Ethics canons 1 and 2 by compromising the integrity and independence of the judiciary and the appearance of impartiality.
Judge Trammell’s other ex parte communications, with Lo, with Chu, and with Chu’s attorneys, constitute prejudicial conduct. His communications *CJP Supp. 65 with Lo in which he discussed Lo’s probation or the criminal proceedings as they related to Jin and Chu violated California Code of Judicial Ethics canons 1 and 2, but the special masters found that they were not judicial acts. Judge Trammell’s ex parte communications with Chu and her attorney also violated canons 1 and 2 and were judicial acts, but the special masters found that there was not clear and convincing evidence that they were for a corrupt motive.
DISCIPLINE
As Judge Trammell has retired from office, he is not subject to removal. The California Constitution (art. VI, § 18, subd. (d)) provides, however, that the Commission may censure a former judge, and, where appropriate, “may also bar a former judge who has been censured from receiving an assignment, appointment, or reference of work from any California state court.”
The Commission has found that for more than three months Judge Trammell participated in a clandestine sexual relationship with a probationer, who was also a codefendant to two others whose criminal cases were pending before him. The facts reveal that Judge Trammell put himself in a position to be compromised and permitted the situation to continue by failing to disqualify himself once he established a totally inappropriate liaison with Lo. In addition, Judge Trammell not only failed to disclose the relationship, he actively used his position as a judge to further that relationship. He initiated calls to attorneys, counseled Lo and the attorneys on how to proceed, and ruled on the motions that the attorneys filed at his direction. Furthermore, there is no indication that Judge Trammell contemplated any closure to this situation. The end came only when jail officials intercepted correspondence from Jin to Lo which alleged that Judge Trammell had a sexual relationship with Lo. Even then, Judge Trammell was less than forthcoming about the relationship, and, without notice to counsel, he issued an order canceling the probation condition requiring Lo to receive counseling.
The Commission notes that Judge Trammell had served on the bench for 25 years when he first met Lo. He clearly understood not only that the relationship was improper but also that he could not ethically continue to preside over her case and those of her codefendants. Judge Trammell’s misconduct compromised the integrity and independence of the bench and cannot be tolerated. His misconduct warrants removal from office—a sanction not available to the Commission because of his retirement. Since the passage of Proposition 190, a judge can no longer avoid all discipline by retiring from the bench. Accordingly, the Commission imposes the maximum discipline available to it. We publicly censure Judge Trammell and we bar him from receiving any future assignments, appointments or references.
*CJP Supp. 66 Accordingly, the Commission orders that Judge George W. Trammell III be publicly censured, and that he be barred from receiving any assignment, appointment, or reference of work from any California state court.
This decision shall constitute the order of public censure and bar.
Commission members Robert C. Bonner, Esq., Mr. Mike Farrell, Hon. Daniel M. Hanlon, Patrick M. Kelly, Esq., Mr. Luke Leung, Ms. Ramona Ripston, Ms. Harriet Salarno, and Donald E. Vinson, Ph.D., voted for the public censure and bar. Ms. Ophelia Basgal and Hon. Lois Haight did not participate. There was one vacant position on the Commission.

 The special masters were Justice Robert R. Puglia of the Court of Appeal, Third Appellate District (presiding), Justice Daniel J. Kremer of the Court of Appeal, Fourth Appellate District, Division One, and Judge Francisco P. Briseño of the Orange County Superior Court.

 The office of trial counsel submitted a three-page opening brief and responded to Commission counsel’s letter stating that they did not seek to make an oral presentation to the Commission.

 There is one vacancy on the Commission and one member was not present for the vote.

 The deputy sheriff testified that Judge Trammell told him that someone posing as him had deactivated his daughter’s residential alarm, that he had reported prowlers at his home to the local police, and that one night when he came home, “he discovered a shotgun that he had purchased was now lying in the middle of his bed with ... a round in the chamber, and he normally did not leave it that way for safety purposes.”

 The attorney further testified that his subsequent phone call to the district attorney’s office revealed that the judge’s allegation was not well founded.

 Citing Geiler v. Commission on Judicial Qualifications (1973) 10 Cal.3d 270, 276-277 [110 Cal.Rptr. 201, 515 R2d 1], and Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1090 [77 Cal.Rptr.2d 408, 959 P.2d 715], the special masters noted that clear and convincing evidence is “proof that rises to a ‘high probability,’ but not necessarily beyond a reasonable doubt.”

 A judge acts in bad faith when he or she performs a judicial act for a corrupt purpose which is a “purpose other than the faithful discharge of judicial duties.” (Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1092.)