**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 8, 2013**

# In the Court of Appeals of Georgia

A13A1436. THE STATE v. WAKEFIELD.

A13A1494. THE STATE v. NUTT.

A13A1545. THE STATE v. ARNOLD.

A13A1599, A13A1600. THE STATE v. BOYNTON, vice versa.

A13A1622, A13A1623. THE STATE v. WILLIS, vice versa.

BRANCH, Judge.

These five appeals and two cross-appeals arise from revelations that in October 2008, Judge Paschal English had a sexual encounter with Kimberly Cornwell, a Griffin Judicial Circuit public defender who represented five defendants or their co-

defendants[1] at trial before Judge English in Fayette County Superior Court between November 2008 and March 2010. Judge English resigned from the bench on April 23, 2010.

All five defendants amended their timely motions for new trial to assert that the English-Cornwell relationship, and/or defendants' lack of knowledge concerning it, violated the Code of Judicial Conduct and deprived defendants of their rights to due process, including conflict-free representation. In October 2012, the trial court granted new trials in all five cases after finding that the English-Cornwell affair had "continued throughout the trials" at issue, "requir[ing] voluntary recusal by Judge English," and that Judge English's failure to do so had violated the Code of Judicial

---

[1] Christopher Wakefield and Travion Willis (Cases No. A13A1436 and A13A1622) were convicted of armed robbery, kidnapping, aggravated assault, possession of a firearm during the commission of a crime, and theft of a motor vehicle on November 12, 2008. William Nutt (Case No. A13A1494) was convicted of aggravated child molestation and aggravated sexual battery on March 24, 2010. Rashad Arnold (Case No. A13A1545) was convicted of burglary on September 29, 2009. Calvin Boynton (Case No. A13A1599) was convicted of armed robbery, aggravated assault, possession of a sawed-off shotgun, and possession of marijuana on September 15, 2009. Case No. A13A1600 is Boynton's cross-appeal to Case No. A13A1599; Case No. A13A1623 is Willis's cross-appeal to Case No. A13A1622. See *State v. Wofford*, 321 Ga. App. 249, 259 (2) (739 SE2d 110) (2013) (a defendant seeking to assert errors other than those relied upon to obtain a new trial under OCGA § 5-7-1 (a) (7) must file a notice of cross-appeal in the trial court as provided by OCGA § 5-7-1 (b)).

Conduct and amounted to structural error. We affirm in the five direct appeals and dismiss the cross-appeals as moot.

When a trial court grants a new trial "'on special grounds involving a question of law,'" *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009), quoting *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.*, 275 Ga. App. 872, 873-874 (1) (622 SE2d 92) (2005), we review the grant "de novo" and "reverse if the trial court committed legal error." *O'Neal*, 285 Ga. at 363. Even in such circumstances, of course, we continue to "accept the trial court's factual findings and credibility determinations unless clearly erroneous." *Suggs v. State*, 272 Ga. 85, 88 (526 SE2d 347) (2000) (whether a defendant was deprived of his right to effective counsel is a "mixed question of fact and law").

So viewed, the record shows that at a first hearing held on April 20, 2011, the State stipulated to the facts that on October 13, 2008, a Fayette County deputy observed and recorded Judge English and Cornwell in a parked car engaged in a sexual act.[2] The deputy told the couple to "move on" and reported the matter to two other Fayette County officers but took no further action. The State also stipulated that

---

[2] According to an investigator's report, the video recording of the incident was destroyed automatically after one year.

Judge English was married at the time and remained so through his resignation and that Judge English had sought to transfer cases on which Cornwell was working to his courtroom, some of which were so transferred on September 22, 2009. A co-worker of Cornwell's testified that in August 2009, she and Cornwell were attending a seminar on drug courts in Reno, Nevada, when Cornwell told her that Judge English was also present. The co-worker also testified that Judge English had consistently played an active role in the Griffin Judicial Circuit's drug courts and maintained an interest in the subject.

At the same hearing, Cornwell's counsel stated in his place that Cornwell would invoke her right against self-incrimination to any questions concerning the existence, concealment, or duration of her relationship with Judge English. Cornwell's counsel stipulated, however, that none of Cornwell's clients were made aware of either the relationship or any conflict that might have arisen from it. Likewise, Judge English's counsel stated that the judge would invoke his right against self-incrimination as to the duration of his relationship with Cornwell. After an additional stipulation that the State Bar of Georgia had taken no disciplinary action against either Judge English or Cornwell, the State offered evidence showing that the sentences imposed in the five cases at issue were commensurate with others handed down between 1989 and 2010.

4

At a second hearing held on May 8, 2012, the parties stipulated to the content of an investigator's report to the district attorney stating that the relationship between English and Cornwell came to light as a result of a tip to the public defender's office in 2009, and not as a result of any disclosure by the deputy who witnessed the October 2008 sexual encounter. The parties also stipulated that an independent investigation by the Georgia Public Defender's Standards Council had found no evidence that any defendant had suffered any actual prejudice as a result of the relationship between Judge English and Cornwell. Judge English's former administrative assistant also filed an affidavit stating that she had no personal knowledge of any affair between the two; that Judge English usually made his own travel plans without her assistance; and that although he normally apprised her of his travel plans, he did not do so concerning the August 2009 drug court seminar in Reno.

On July 23, 2012, the first judge presiding over the motions for new trial recused himself because, having "heard unsolicited information" on the issue whether the English-Cornwell relationship existed at the time of each defendant's representation, and having "shared that information with the [parties] and given both sides an opportunity for further investigation," the judge now considered himself a "potential witness." A second judge then invited additional briefing on the question

5

whether the nondisclosure of the English-Cornwell relationship amounted to "structural error" denying the defendants due process of law. After hearing argument, the second judge issued an order finding that as a matter of fact, the record included "subtle intimations" that the couple's relationship had continued for some time after October 2008, including the following exchange at the March 2010 trial of defendant Nutt:

Court: Anything else, Ms. Cornwell?

Cornwell: Those are all the issues I have, judge.

Court: All right. On this trial, anyway, right?

Cornwell: Yes.

Court: All right.

Cornwell: Let's limit it to that.

Court: I'm just kidding.

Based on the evidence before it, the second judge concluded that the couple's "secret relationship continued throughout the trials of the other defendants now before this Court," "requir[ing] voluntary recusal by Judge English," and that his failure to recuse himself had violated the Code of Judicial Conduct and deprived each defendant of a fair trial.

6

1. The State attacks the trial court's conclusion that the English-Cornwell relationship continued throughout the period from October 2008 (when the couple was discovered by the Fayette County deputy) to March 2010 (when defendant Nutt's trial was held) as "not supported by the objective facts before it." Specifically, the State claims that in light of Judge English's and Cornwell's invocations of their privilege against self-incrimination, the record contains no evidence of anything other than a single sexual encounter between the two occurring some weeks before the first of the trials at issue. We disagree.

As our Supreme Court has held,"[n]either [the State nor a criminal defendant] has the right to benefit" from any inferences a factfinder may draw "simply from [a] witness's assertion of the privilege [against self-incrimination] either alone or in conjunction with questions that have been put to him." *Davis v. State*, 255 Ga. 598, 604 (7) (340 SE2d 869) (1986); see also OCGA § 24-5-505 (a) (effective January 1, 2013) ("No party or witness shall be required to testify as to any matter which may incriminate or tend to incriminate such party or witness or which shall tend to bring infamy, disgrace, or public contempt upon such party or witness."); OCGA § 24-9-27

7

(2012).[3] Thus neither the State nor the defendants can be permitted to benefit from these witnesses' invocation of their privileges against self-incrimination. Further, undisputed evidence supported the trial court's factual finding that the English-Cornwell relationship did in fact continue throughout the period at issue. Specifically, and as we have noted above, undisputed evidence showed that (1) the relationship between Judge English and Cornwell came to light as a result of a tip to the public defender's office in 2009, months after the October 2008 sexual encounter seen by the Fayette County deputy; (2) Judge English sought to transfer cases on which Cornwell was working to his courtroom, some of which were so transferred on September 22, 2009; (3) although Judge English normally apprised his administrative assistant of his

---

[3] There are times when "[t]he materiality of the evidence outweighs the testimonal privilege." *Brown v. State*, 242 Ga. 536, 539 (3) (250 SE2d 438) (1978). Specifically, a witness may be compelled "to answer questions tending to bring infamy, disgrace or public contempt upon himself or his family, if the proposed evidence is material to the issues in the case." Id. at 538-539 (3), citing *Brooks v. State*, 233 Ga. 524 (2) (212 SE2d 355) (1975). "[I]t is only where the proposed answer has no effect on the case except to impair the witness' credibility that the witness may fall back on the privilege." *Brown*, 242 Ga. at 539 (3). Evidence tending to show that Judge English and Cornwell were engaged in an adulterous relationship during some or all of the five trials at issue would arguably be material as to whether Judge English violated Canon 3 (E) (1) by failing to disclose that relationship. When the trial court asked whether any party sought to compel either Judge English or Cornwell to testify on this subject, however, none wished to do so, with the result that neither of these witnesses can be said to have produced any evidence or presumption on the subject of the relationship's duration.

travel plans, he did not do so concerning the August 2009 drug court seminar in Reno also attended by Cornwell; (4) at the seminar, Cornwell told a co-worker that Judge English was also present; and (5) that the judge and Cornwell engaged in banter about unspecified "issues" at defendant Nutt's March 2010 trial. In light of these facts, the trial court was authorized to reach the factual conclusion, supported by some evidence and therefore not clearly erroneous, that the English-Cornwell relationship continued from October 2008 through at least March 2010, when the last of the five trials at issue here was held. See *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) ("it is well-settled that the 'clearly erroneous' standard for reviewing findings of fact is equivalent to the highly deferential 'any evidence' test.") (citations omitted).

2. The State argues that the trial court erred when it granted new trials on the basis of the existence and non-disclosure of the sexual relationship between Cornwell and Judge English. We disagree.

(a) As our Supreme Court has recently repeated, "'[a]ll parties before [a] court have the right to an impartial judicial officer.'" *Batson-Cook*, 291 Ga. 114 (728 SE2d 189) (2012), quoting *Stephens v. Stephens*, 249 Ga. 700, 702 (2) (292 SE2d 689) (1981).

9

> Judicial integrity is a state interest of the highest order because the power and prerogative of a court to resolve disputes rests upon the respect accorded by citizens to a court's judgments which, in turn, depends upon the issuing court's absolute probity. . . . It is vital to the functioning of the courts that the public believe in the absolute integrity and impartiality of its judges, and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial.

(Citations and punctuation omitted.) *Batson-Cook*, 291 Ga. at 114. An issue of judicial disqualification may have constitutional implications because "'a fair trial in a fair tribunal is a basic requirement of due process.'" (Punctuation omitted.) Id., quoting *In re Murchison*, 349 U. S. 133, 136 (75 SCt 623, 99 LE 942) (1955), and citing *Caperton v. A. T. Massey Coal Co.*, 556 U. S. 868 (129 SCt 2252, 173 LE2d 1208) (2009). Individual states "may adopt recusal standards more rigorous than required by due process," however. *Batson-Cook*, 291 Ga. at 115. "[B]ecause State statutes and codes of judicial conduct provide more protection than due process requires, most disputes over disqualification and recusal of judges rarely implicate the constitutional standard." Id., citing *Caperton*, 556 U. S. at 889.

Although the trial court analyzed the disqualification issue under the rubric of constitutional due process, including "structural error" analysis, we are authorized to affirm the grant of new trials to these defendants if it is right for any reason raised

below. See *Gude v. State*, 289 Ga. 46, 47 (709 SE2d 206) (2011) (affirming a trial court's ruling on a motion to recuse under the "right for any reason principle"). We therefore consider whether the evidence supports a conclusion that Judge English violated Georgia's disqualification rules when he engaged in an undisclosed sexual relationship with Cornwell while presiding over the trials at issue.

(b) OCGA § 15-1-8 (a) provides that

[n]o judge or Justice of any court, magistrate, nor presiding officer of any inferior judicature or commission shall: (1) [s]it in any case or proceeding in which he is pecuniarily interested; (2) [p]reside, act, or serve in any case or matter when such judge is related by consanguinity or affinity within the sixth degree as computed according to the civil law to any party interested in the result of the case or matter; or (3) [s]it in any case or proceeding in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all parties in interest. . . .

There is no allegation that Judge English had any pecuniary interest or previous experience in the matters at issue here, and the relationship between the judge and Cornwell was not one of either consanguinity or affinity as defined by OCGA § 15-1-8 (a) (2). See, e.g., *Blalock v. Waldrup*, 84 Ga. 145 (10 SE 622) (1889) (party who was

11

married to cousin of judge's wife was not related to the judge by either consanguinity or affinity).

We thus consider whether Judge English violated the Code of Judicial Conduct when he failed to disclose his relationship with Cornwell or to recuse himself from these trials. Our Supreme Court has held that the Code of Judicial Conduct "provides a broader rule of disqualification" than does OCGA § 15-1-8. *Stephens*, 249 Ga. at 701 (2).[4] The provision of the Code at issue in this case is Canon 3 (E) (1), which provides in relevant part:

> Judges *shall* disqualify themselves in any proceeding in which their impartiality might *reasonably* be questioned, including but not limited to instances where . . . (a) the judge has a *personal bias* or prejudice *concerning a party or a party's lawyer,* or personal knowledge of disputed evidentiary facts concerning the proceeding.

(Emphasis supplied.) Canon 3 E (1) is "an inclusive catch-all provision for analysis of alleged disqualifying judicial conduct and sets a general standard *that the appearance of partiality requires recusal*, followed by specific examples of

---

[4] Applying *Stephens*, this Court concluded in 1998 that "[w]hen considering the issue of disqualification, both OCGA § 15-1-8 and Canon 3 [of the Code of Judicial Conduct] should be considered and applied." *Kurtz v. State*, 233 Ga. App. 186, 188 (3), n. 1 (504 SE2d 51) (1998). Our Supreme Court confirmed *Kurtz* on this point in 2009. *Jones County v. A Mining Group*, 285 Ga. 465 (678 SE2d 474) (2009).

12

disqualifying conditions." (Citation and punctuation omitted.) *Batson-Cook*, 291 Ga. at 121 (2) (b) (ii); see also id. at 115 (judges "'must avoid all impropriety and appearance of impropriety'") (quoting Commentary on Canon 2 (A), citations omitted).

Canon 3 imposes an objective standard on questions as to a judge's ability to be impartial: a situation in which a judge's "impartiality might reasonably be questioned" is one raising "'a reasonable perception of lack of impartiality by the judge, held by a fairminded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates.'" (Citation and punctuation omitted.) *Jones County*, 285 Ga. at 466, quoting *Baptiste v. State*, 229 Ga. App. 691, 694 (1) (494 SE2d 530) (1997). To disqualify a judge, a bias "must be of such a nature and intensity to prevent the complaining party from obtaining a trial uninfluenced by the court's prejudgment." Id. at 467; see also *Hargrove v. State*, 299 Ga. App. 27, 31-32 (2) (681 SE2d 707) (2009) (a trial court's failure to recuse sua sponte "'will warrant reversal *only* where the conduct or remark of the judge constitutes an egregious violation of a specific ethical standard, and it must support the *inescapable* conclusion that a reasonable person would consider the judge to harbor a bias that affects his ability to be

13

impartial'") (emphasis in original), quoting *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008)).

Although the trial court analyzed the disqualification issue under the rubric of constitutional due process, its findings of fact as to the duration of the relationship between Judge English and Cornwell also support our legal conclusion that Judge English's failure to recuse himself from the trials at issue was a violation of Canon 3. This is not a case of merely social contact between a judge and a lawyer during a trial involving them both. See, e.g., *Demoulas v. Demoulas Super Markets*, 428 Mass. 543, 551 (1) (b) (703 N.E.2d 1141) (1998) (no appearance of impropriety when judge had social contact with lead counsel for party in a restaurant owned by judge's spouse during the pendency of a trial). Rather, the record before us supports a reasonable inference that Judge English's ongoing and intimate relationship with Cornwell during each of the five trials at issue caused him to harbor a bias "of such a nature and intensity to prevent the complaining party from obtaining a trial uninfluenced by the court's prejudgment" and could lead to "a reasonable perception of lack of impartiality by the judge, held by a fairminded and impartial person based upon objective fact or reasonable inference." *Jones County*, 285 Ga. at 466-467; see also New York Advisory Committee on Judicial Ethics, Opinion 11-45 (April 28, 2011)

(if a relationship between an attorney and a judge is "ongoing and appears to be sufficiently close as to give rise to a perception that the judge's impartiality might reasonably be questioned," or "is such that a reasonable person could reasonably conclude that the relationship might influence the judge – and thus call into question the judge's impartiality," then "disqualification is required"). As other courts have held in similar circumstances, we therefore conclude that when Judge English failed to disclose his relationship with Cornwell or to recuse himself from the trials at issue here, he violated Canon 3 (E) (1). See *Inquiry Concerning Trammell*, 48 Cal. 4th CJP Supp. 56, 63-65 (1999) (judge who engaged in a sexual relationship with a criminal defendant while presiding over cases against two co-defendants was guilty of "willful misconduct," including "bad faith" in his "corrupt purpose" of furthering that relationship, and violated Canon 3 (E) when he failed to disclose the relationship).

(c) Finally, Judge English's violation of Canon 3 (E) is not harmless error. As our Supreme Court has recently emphasized, "[j]udicial integrity is a state interest of the highest order because the power and prerogative of a court to resolve disputes rests upon the respect accorded by citizens to a court's judgments which, in turn, depends upon the issuing court's absolute probity." (Citation and punctuation omitted.) *Batson-Cook*, 291 Ga. at 114. "It is vital to the functioning of the courts that the public

15

believe in the absolute integrity and impartiality of its judges, and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial." (Citation omitted.) Id. Specifically, Canon 3 E (1), "an inclusive catch-all provision for analysis of alleged disqualifying judicial conduct," sets "a general standard that *the appearance of partiality requires recusal*[.]" Id. at 121 (2) (emphasis supplied).

The record before us supports the trial court's factual conclusion that Judge English was involved in a close personal relationship with Cornwell during each of the trials at issue, and it is undisputed that Judge English failed to disclose this relationship to the parties before us during the criminal trials at issue. Compare *Batson-Cook*, 291 Ga. at 121-122 (remanding motion to recuse for disposition by a different judge when affidavits in support of the motion set out "objective facts" which "would cause a fair-minded and impartial person to have a reasonable perception of the trial judge's lack of impartiality"). Although we are mindful of the suffering which new trials may cause the victims in some or all of these cases, we are nonetheless compelled to draw the legal conclusion that Judge English's violations of Canon 3 require new trials for each of these five defendants.

16

3. Our affirmance of the trial court's grant of new trials moots the cross-appeals concerning the sentences imposed on defendants Boynton and Willis.

*Judgments affirmed in Case Nos. A13A1436, A13A1494, A13A1545, A13A1599, and A13A1622. Appeals in Case Nos. A13A1600 and A13A1623 dismissed as moot. Phipps, C. J.,and Ellington, P. J., concur.*

17