**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0622. WEDEL v. THE STATE.

BRANCH, Judge.

James Wedel was tried by a Cherokee County jury and found guilty of one count of child molestation.[1] Wedel now appeals from the denial of his motion for a new trial, arguing that the trial court decided his lawyer's motion to withdraw during an informal hearing from which Wedel was absent, and that this conduct violated his constitutional right to be present at all critical stages of the proceedings against him. We find no error and affirm.

Where, as here, an appeal from the grant or denial of a motion for a new trial involves a mixed question of law and fact, we employ two different standards of

---

[1] OCGA § 16-6-4 (a). The jury also acquitted Wedel of one count of aggravated sexual battery.

review. We review de novo the trial court's decision as to any questions of law, while applying the clearly erroneous standard of review to any factual findings made by that court. *State v. Wakefield*, 324 Ga. App. 587 (751 SE2d 199) (2013). "In Georgia, it is well-settled that the 'clearly erroneous' standard for reviewing findings of fact is equivalent to the highly deferential 'any evidence' test." *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (citations omitted). Thus, we will uphold the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. See *Cruz v. State*, 305 Ga. App. 805, 808-809 (2) (700 SE2d 631) (2010) ("[i]t is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony") (citation, punctuation and footnote omitted).

The relevant evidence in this case consists of the transcript of the hearing on Reynolds's motion to withdraw as Wedel's attorney and the testimony received at the hearing on Wedel's motion for a new trial. The record shows that following his arrest, Wedel retained Marietta attorney Victor Reynolds to represent him. Reynolds and Wedel were personal friends, with Wedel, his brother, and his brother's wife having done work for Reynolds at his home. After discovering that he knew the alleged victim (who was the stepdaughter of Wedel's brother), Reynolds associated attorney

2

Jimmy Berry, with whom Reynolds shared office space, to assist him with the representation of Wedel.[2] The case was specially set for trial on August 22, 2011. On the day before trial, Reynolds met with members of Wedel's family at his office, who provided Reynolds with clothes for Wedel, who was incarcerated, to wear at trial. Wedel's girlfriend specified which of the clothes the attorneys should provide to Wedel for the first day of trial.

The following morning, Reynolds and Berry took the designated clothes with them into the Cherokee County courthouse and gave them to deputies, who were then to give the clothes to Wedel. A short time later, however, the deputies informed Reynolds, Berry, and the assistant district attorney trying the case that potential contraband had been found in the jacket pocket of the suit the attorneys had provided for Wedel. Two agents from the Cherokee County narcotics squad then interviewed Reynolds and Berry and informed the lawyers that they were seeking a search warrant for the remaining clothes located in their legal office. Reynolds, Berry, and the prosecutor then went to the chambers of the judge scheduled to preside at trial to

---

[2] Eventually it was decided that Berry would conduct voir dire and would cross-examine three of the State's seven witnesses, including the victim.

3

inform him of these developments. Wedel was not present at that meeting, which was not recorded or transcribed.

Shortly after the in-chambers meeting, court convened with all attorneys and Wedel present. At the outset of the court proceedings, Reynolds stated on the record the events of that morning and concluded by saying, "I've been placed in – in minimally a very difficult position in continuing to represent Wedel," and moved to withdraw from the case. The trial judge then noted for the record how he had learned of the morning's events concerning the discovery of the alleged contraband, that he had met with the attorneys in chambers prior to court, and that during the conversation in chambers, Reynolds had indicated he wanted to withdraw from representing Wedel. The trial judge stated on the record that after Reynolds proposed withdrawing from the case, the judge "made some suggestions about possible options," and told Reynolds and Berry "to think about" those options and to speak with Wedel. After summarizing what had transpired in chambers, the judge asked the lawyers for both Wedel and the State if any of them knew of any additional information "concerning our conversation back in chambers" that needed to be placed on the record. The judge further stated: "I want to hear from [Wedel] whether there's any problem that [the] conversation [occurred] outside his presence. . . . I want to make sure there's no issue

4

about anything being discussed outside his presence." Reynolds responded that he and Berry had spoken with Wedel and "advised him of the substantive nature" of the conversation that had occurred in chambers. The State responded that the description of the conversation given by the court was "a complete assessment of that meeting."

At this point in the proceedings, Berry asked the court if Reynolds was going to be allowed to withdraw. The judge indicated no decision had been made, saying: "I'm going to ask [Wedel] and then I'm going to go step by step [through] some of the things we discussed." The judge reiterated, however, that before he addressed the question of withdrawal, he wanted "to make sure there is not any problem about the fact of our having discussed [the situation] without [Wedel] being present." The judge therefore asked once more if there was anything either party wanted to place on the record regarding the in-chambers meeting "before I inquire of Mr. Wedel about Mr Reynolds' withdrawing. Anything else?" When the parties offered no additional information, the court spoke directly to Wedel, telling him: "Mr. Reynolds . . . has said he wants to withdraw. Do you have a problem with that?" Wedel responded, "My preference is to retain both [attorneys] as previously planned. And I assume full responsibility for having a Valium tablet." The trial court cautioned Wedel not to make any remarks about the contraband and again asked whether he had any objection

5

to Reynolds's proposed withdrawal from the case. Wedel reiterated his desire to proceed with both attorneys representing him. The court thereafter indicated its inclination to grant Reynolds's motion and asked Wedel if he had "[a]nything else" he wanted to say about the subject. Wedel responded that he had nothing else to say.

The trial judge then asked the State to make an offer of proof as to how the pill had been discovered and as to whether there was any possibility that the pill had been in Wedel's clothes by accident. The judge further stated that he wanted to hear such proof "before I decide whether to let . . . Mr. Reynolds withdraw." The prosecutor then stated in her place that phone calls at the Cherokee County jail, where Wedel was incarcerated, were recorded and sometimes monitored; that on the previous weekend Wedel was heard asking his girlfriend to place a pill in the clothing he would be provided for trial "so that he could relax a little bit and be able to focus on the trial"; that based on this conversation the deputies had been careful to search Wedel's clothing after receiving it from his attorneys that morning; and that during the search, deputies had discovered what they suspected was a Xanax tablet in the interior breast pocket of Wedel's suit jacket. After hearing this offer of proof, the trial court granted Reynolds's motion to withdraw.

The case thereafter proceeded to trial with Berry acting as Wedel's sole lawyer. Following his conviction, Wedel filed a motion for a new trial, arguing, among other things, that the trial judge had heard and decided Reynolds's motion to withdraw during the in-chambers meeting from which Wedel was absent. Wedel asserted that the trial court had therefore violated his constitutional right to be present at all critical stages of the proceeding against him. At the hearing on Wedel's motion, Berry testified that when he left the chambers of the judge on the morning of trial, it was his understanding that he would be trying the case alone, without Reynolds. Berry explained that "after [Reynolds] told the judge he wanted to withdraw, I knew it was going to fall on me." He further testified that following the meeting in chambers, Reynolds and he had met with Wedel to discuss the situation with their client. As best Berry could recall, Reynolds indicated to Wedel that "he was withdrawing no matter what." There was no testimony by Berry as to whether the lawyers explained to Wedel that the ultimate decision about Reynolds's withdrawal would be made by the trial court.

Reynolds testified that at the meeting in chambers, he told the judge that he was "extremely aggravated" and that he wanted to withdraw from his representation of Wedel. According to Reynolds, the judge responded that he wanted to go to the

7

courtroom and "get everything on the record." The judge suggested that perhaps Berry could try the case with Reynolds sitting in close proximity to act as an advisor, and Reynolds took this as an indication that the judge would grant the motion to withdraw. Reynolds also stated that during the subsequent meeting with Wedel, he told Wedel that he was going to withdraw from the case.

The trial court denied Wedel's new trial motion, finding, in relevant part, that "there was no hearing, no testimony, and there were no rulings" that took place in Wedel's absence. In its written order, the court observed, "[a]s is usual for this trial judge, suggestions were made in chambers about ways to work around" the situation presented by the discovery of the contraband and Reynolds's expressed desire to withdraw from the case. The court further noted, however, that the transcript of the hearing on the motion to withdraw and the testimony at the hearing on the motion for new trial showed that "no final ruling or decision was made while in chambers." On appeal, Wedel argues that a hearing on Reynolds's motion to withdraw from his representation of Wedel on the eve of trial was a critical stage of the proceedings

8

against him, and that the trial court violated his right to be present at that proceeding by deciding that motion in chambers.[3]

Under both the Georgia and the federal constitutions, a criminal defendant has the "right to be present at all critical stages of his trial." *Fair v. State*, 288 Ga. 244, 260 (3) (702 SE2d 420) (2010) (citation omitted). "[T]he right to be present attaches 'at any stage of [a] criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.' *Kentucky v. Stincer*, 482 U. S. 730, 745 (107 SCt 2658, 96 LEd2d 631) (1987)." *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). The Supreme Court of Georgia "has determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." Id. (citation and punctuation omitted). Nevertheless, a defendant's right to be present during a critical stage "may be waived if the defendant later acquiesces in the proceedings occurring in his absence." *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004) (citation and punctuation omitted). See also *Brown v. State*, 310 Ga. App. 285, 290 (6) (e) (ii) (712

_____

[3] Wedel does not challenge as improper the grant of Reynolds's motion to withdraw from Wedel's case.

SE2d 521) (2011) (defendant waived right to claim that his absence from proceedings was error where he was fully informed of the proceedings that occurred in his absence and acquiesced in those proceedings).

Here, evidence was presented at the hearing on the motion for new trial that supported the court's conclusion that the trial court did not rule on Reynolds's withdrawal motion until after court had been convened and Wedel was present. The record also shows that the judge went to great lengths to get all of the information about what had transpired at the in-chambers meeting on the record in Wedel's presence; that the judge repeatedly asked Wedel if he had a problem with the fact that a discussion about the situation occurred without Wedel being present; and that neither Wedel nor Berry objected. Under these circumstances, Wedel waived the right to claim that his absence was error. See, e.g., *Wilson v. State*, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001) (defendant acquiesced in the proceedings when, following an in-chambers conference held in defendant's absence at which the court ruled on a motion in limine, when the motion and the court's ruling wwere subsequently discussed at length by all parties in defendant's presence without objection by defense counsel and without comment by defendant); *Brown*, 310 Ga. App. at 290 (6) (e) (ii).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*